Colter *v.* Frese *et al.*

---

## COLTER *v.* FRESE ET AL.

MECHANIC'S LIEN.—*Material-Man.*—A material-man who furnishes materials, not to the owner, but to the contractor, for the erection of a new building, can acquire and enforce a lien on the building, and on the interest of the owner

of the real estate on which the building stands, to the extent of the value of the materials furnished.

SAME.—*Payment to Contractor.*—*Notice.*—Such lien, if the notice is filed within the time limited by the statute, is not defeated by the fact that the owner, before the filing of the notice of intention to hold the lien, has paid the contractor in full for the work and materials.

From the Marion Superior Court.

*R. P. Parker, H. Lee,* and *J. B. Elam,* for appellant.

*H. Dailey* and *G. W. Spahr,* for appellees.

WORDEN, J.—This was an action by Charles Frese and Charles F. Hahn against Richard S. Colter, to enforce a supposed lien which the plaintiffs had acquired upon certain real estate described in the complaint, owned by Colter, for materials furnished by the plaintiffs to Green & Taylor, who were contractors with Colter, for the erection of a house upon the premises described. John A. Lyons and the Indianapolis Manufacturers and Carpenters' Union were made parties defendants, and they each filed a cross complaint against Colter to enforce a like lien.

Colter filed separate answers to the original and cross complaints. The third paragraph of each of these answers alleged, in substance, that he, Colter, was the owner of the premises ; that he made a contract with Green & Taylor, and no one else, for the furnishing of the materials and the erection of the house; that in pursuance of the contract Green & Taylor furnished the materials and erected the house; and that before notices of an intention to hold said liens were filed in the recorder's office, he fully paid and satisfied Green & Taylor for the work done and materials furnished.

Demurrers were filed respectively to each of these paragraphs of answer, for want of sufficient facts, but were overruled, and exception taken.

Issues of fact were formed and the cause submitted to the court for trial.

The court made a special finding, which it is not neces-

VOL. XLV.—7

sary to set out in full. The finding embraces all the facts necessary to the establishment of the lien of the original plaintiffs, as well as of Lyon and the other cross complainant, if as material-men furnishing materials to the contractor of Colter, they are entitled to such lien, and unless they are precluded by the fact that before notices of the intent to hold the liens were filed in the proper office, Colter settled with and paid off his contractors in full. The court held, as a conclusion of law, from the facts found, that neither the original plaintiffs, nor the cross complainants, were entitled to maintain their supposed liens, and rendered judgment against all of them in favor of Colter.

Due exceptions were taken to the conclusions of law.

On appeal to the general term, the judgment rendered at special term was reversed, the court holding that error was committed in overruling the demurrers to the paragraphs of answer mentioned, and in the conclusions of law.

From the judgment of reversal thus rendered at general term, an appeal has been taken to this court, and the same questions are presented here as were presented to the court below at general term.

The two questions thus presented have been elaborately argued by counsel. They may be stated as follows:

1. Can a material-man who furnishes materials, not to the owner, but to the contractor, for the erection of a new building, acquire and enforce a lien on the building and on the interest of the owner of the lot on which it stands, to the extent of the value of the materials furnished?

2. If such lien can be acquired, is it defeated by the fact that the owner, before the filing of the notice of intention to hold the lien, it being filed within the time limited, has paid off the contractor in full for the work and materials?

That such lien can be acquired was decided by this court in the case of *Barker* v. *Buell*, 35 Ind. 297. We have been earnestly pressed to reconsider the decision in that case. We have done so, but have again reached the same conclusion.

Colter *v.* Frese *et al.*

In that case, the original and amended sections of the entire statute relating to mechanic's liens were brought together and set out. At the risk of some prolixity, we again transcribe two of the sections, being those on which the questions here involved mainly depend.

"Sec. 647. Mechanics, and all persons performing labor, or furnishing materials for the construction or repair of any building, or who may have furnished any engine or other machinery for any mill, distillery or other manufactory may have a lien separately or jointly upon the building which they may have constructed or repaired, or upon any buildings, mill, distillery, or other manufactory for which they may have furnished materials of any description and on the interest of the owner in the lot or land on which it stands, to the extent of the value of any labor done or materials furnished, or for both.

"Sec. 648. The provisions of this act shall only extend to work done or materials furnished on new buildings, or to a contract entered into with the owner of any building for repairs, or to the engine or other machinery furnished for any mill, distillery or other manufactory, unless furnished to the owner of the land on which the same may be situate, and not to any contract made with the tenant, except only to the extent of his interest."

Section 649 provides for a personal liability of the owner of a building in favor of any sub-contractor, journeyman, or laborer employed in the construction or repair, or furnishing materials for any building, not to exceed, however, the amount due, or that may become due, from the owner to the employer.

This section is confined to the subject of personal liability, and has no relation whatever to liens on property.

The other sections of the article provide for the manner of acquiring and enforcing the liens.

If the original plaintiffs and the cross complainants are not entitled respectively to their liens, it must be in consequence of the circumstance that the materials were furnished by

Colter *v.* Frese *et al.*

them to Green & Taylor, the contractors of Colter, and not to Colter himself.

But upon reviewing the statute and again considering its terms, we find ourselves utterly unable to give it a construction that will limit the material-man's right of lien to cases where the materials are furnished to the owner. If such is the case as to material-men, it must be so as to mechanics and all persons performing labor, for they all stand upon the same ground, so far as this provision of the statute is concerned.

Section 647 provides that mechanics and all persons performing labor, or furnishing materials for the construction or repair of any building, shall have a lien, without any limitation in respect to the person to whom the materials are furnished, or for whom the labor may be performed. But the meaning of this section is placed beyond doubt by the next. We quote the following paragraph from the opinion of this court, in the case of *Baylies* v. *Sinex*, 21 Ind. 45, in relation to the two sections: "It is evident the 647th section, above set out, does not give a lien upon the engine or other machinery furnished, as distinct from the building, but only upon the building, or the lot or land upon which it stands.

"The 648th section is somewhat obscurely worded, but it does not, as we think, extend the remedy given by the preceding section, but rather limits or qualifies it. It limits the remedy given by the preceding section, first, to cases where work has been done or materials furnished on new buildings; second, to cases where contracts have been entered into with the owners of buildings for repairs; third, to cases where engines or other machinery have been furnished, etc., to the owner of the land; excluding all contracts with tenants, except only to the extent of their interests. Its object was, undoubtedly, to prevent a tenant from encumbering property with liens, except to the extent of his interest in the property. *Lynam* v. *King*, 9 Ind. 3."

The legislature limited what would otherwise perhaps

have been the effect of section 647, by providing in section 648, in substance, that tenants shall not encumber property with liens except as to their interest in the property, by requiring the contract for repairs to be made with the owner of the property, and not with the tenant merely, or that the engine or other machinery be furnished to the owner, in order to create a lien as against his interest in the property; leaving the implication irresistible that where a new building is erected by the owner, whether he lets the work to a contractor or pursues any other mode of accomplishing the result, the person performing labor on, or furnishing materials for, the building, may have a lien, whether the labor be performed for the owner, or the materials be furnished directly to him or to his contractor.

. The building must be erected by the authority and direction of the owner, in order that any lien may be acquired as against him. No one by committing a trespass upon another's land can acquire a lien upon it; nor can one by furnishing materials for the erection of a building, which the owner of the land has not authorized to be built, acquire such lien. But where the owner causes a building to be erected, whether he lets the work and the furnishing of the materials as an entire contract, or pursues some other course, those performing labor on, or furnishing materials for, the building are entitled to a lien, as provided for.

This is in accordance with the plain and unequivocal provisions of the statute. We shall, before closing this opinion, return to this proposition again, but we will, for convenience, here notice the second question, as the first and second are in some degree blended together.

Is the lien of the mechanic, laborer, or material-man defeated by the payment, to the contractor by the owner, of the whole amount due the contractor, before notice of an intention to hold a lien has been filed?

Section 650 provides for acquiring a lien by filing in the recorder's office of the county a notice of intention to hold a lien on the property, and that "the liens so created shall

relate to the time when the work upon said building or repairs began, and to the time when the person furnishing materials began to furnish the same."

We have already seen that, by the provisions of section 647, the mechanic, laborer, or material-man may have a lien, not to the extent of what may be due from the owner to the contractor, but "to the extent of the value of any labor done or materials furnished, or for both." By the next section, the lien of the material-man is made to relate to the time when he began to furnish materials. The extent of the material-man's lien being the value of the materials furnished, and the time it attaches being the time when he began to furnish materials, it would, in our opinion, be an utter perversion of the law, to hold that though he filed his notice within the prescribed time, yet his lien shall be defeated by full payment by the owner to the contractor before the expiration of the time limited for the filing of the notice. This proposition seems to us to be too plain to admit of much argument or illustration. That such payment should defeat the lien confounds all ideas of the force and legal effect of a lien. Indeed, if such is the case, there is no lien, and the statute which attempts to confer it is a dead letter.

Many arguments have been pressed upon our consideration in respect to this point, as well as upon the question whether a lien can be acquired on account of work done for, or materials furnished to, a contractor, and not the owner. The most of them are based upon the real or supposed hardships of the law, as we construe it, in this, that in many cases it subjects the owner to the liability of making double payment for the same work or materials, and prevents him from making contracts for the erection of buildings and the furnishing of materials therefor, to be paid for otherwise than in money, and other similar inconveniences. These arguments might have much force if addressed to the legislature, whose province is to make the law, but can have little weight against the clear and unequivocal terms of a

statute, when addressed to a court, whose province is to determine what the law is, and not what it ought to be.

The statute in question speaks for itself in unmistakable language. No argument can change its significance. An act of the legislature is not of such plastic nature as that it may be moulded at pleasure by the courts into such form as will make it agree with the standard of expediency, or of right and wrong, which the judges may have created. When the legislative will has been clearly and constitutionally expressed, the courts have no alternative but to follow it. If an enactment is wrong or inexpedient, the legislature may repeal or modify it; but it is not the province of the courts to avoid its effect by construction contrary to its plain intent and meaning. While much has been said against the statute, construed as we think it must be, much may be said in its favor. Its object is to secure to the mechanic, laborer, or material-man, compensation for his work or materials. It prevents the owners of real estate from securing to themselves, without compensation, the benefits of the labor and materials of others, by means of low contracts with irresponsible or perhaps dishonest contractors. The inconveniences of the law do not seem to us to be insuperable. The owner may withhold from the contractor, for the period of sixty days after the completion of the work, enough to protect the property from liens for work or materials. If full payment is made at the end of that time, it is perhaps quite as prompt as payments are usually made.

It is urged that inasmuch as section 649 provides that sub-contractors, journeymen, laborers, and material-men may have a personal action against the owner for their work or materials, by giving him the notice therein provided for, to the extent of what is due, or may become due, from him to the contractor, they should not be held to have the right to acquire a lien. We find nothing, however, in this section that, in our opinion, indicates an intent on the part of the legislature to withhold from them the right to acquire a lien as provided for in the two preceding sections.

The contractor has the right to a lien and also to his personal action against the owner. The object of the law was to place the sub-contractor, journeyman, laborer, and material-man upon the same footing with the contractor, except that the personal action against the owner in favor of the sub-contractor, etc., is limited by the amount that may be due or may become due from the owner to the employer. The lien given might be an inadequate remedy, as the property might be previously encumbered to an extent that would render the lien unavailable; hence the right of a personal action against the owner is conferred to the extent indicated.

It has been urged that, as the law had been in force near twenty years before any one sought to place such construction upon it as would authorize a sub-contractor, etc., to acquire a lien, such construction should not prevail; that the absence of any attempt to acquire and enforce such lien, during so long a period of time, is evidence of general acquiescence that it cannot be acquired. This argument has some force, but it cannot prevail over the clear and explicit terms of the statute conferring the right. We are not aware that the question was ever raised in the State until the case of *Barker* v. *Buell, supra.* See, also, *O'Halloran* v. *Leachey,* 39 Ind. 150. But new points frequently arise upon statutes a great length of time after their passage. Thus, it was not until the year 1840, that the question arose in England, whether a promise by the defendant to the plaintiff to pay to A. B. a debt which the plaintiff owed to A. B. was within the statute of frauds passed in the twenty-ninth year of Charles II., which was the year 1676. Thus, the statute had been in force one hundred and sixty-four years before the question arose. *Eastwood* v. *Kenyon,* 11 A. & E. 438; Smith Con., 5th ed., p. 108.

We have also been referred to some elementary books as authority that a sub-contractor, etc., cannot acquire a lien under the statute set out. The statute never having received construction by the courts upon the point here involved, it is obvious that any comments upon it in this respect could

Colter *v.* Frese *et al.*

only express the individual views of the party making them; and however much we may respect the authors referred to, we cannot yield our convictions to theirs. Moreover, elementary books are often prepared with haste, and sometimes express views which the authors themselves would disclaim upon a fuller consideration of the subject.

There is a striking analogy between the statute and the principles of the civil law, including the maritime, in respect to liens.

Thus says Domat, vol. 1, p. 683, art. 9, par. 1744: "Architects and other undertakers, workmen, and artificers, who bestow their labor on buildings or other works, and who furnish materials, and in general all those who employ their time, their labor, their care, or furnish any materials, whether it be to make a thing, or to repair it, or to preserve it, have the same privilege for their salaries, and for what they furnish, as those have who have advanced money for these kinds of works, and which the seller has for the price of the thing sold."

The "*privilege*" of the seller is mentioned in a preceding article (4), p. 681, as follows: "He who has sold an immovable thing, for which he has not received the price, is preferred before the creditors of the purchaser, and before all others, as to the thing that is sold. For the sale implied the condition that the purchaser should not be master of the thing till he had paid the price. Thus, the seller who has not received the price may either keep the land or tenement, if the price was to be paid before delivery, or he may follow it into what hands soever it may have passed, if he has delivered it before payment."

There are in many of the other states statutes similar to that in question here. An elaborate and well prepared brief intended for another cause has been filed in this, to which we are indebted for a reference to many decisions of other states, under similar statutes. These decisions are in harmony with the conclusions herein arrived at. It would extend this opinion to an unreasonable length to notice them.

all in detail, but a few may be glanced at. In the case of *Parker* v. *Bell*, 7 Gray, 429, it was held under a statute not unlike our own, that a plasterer employed by a builder who has made a written contract with the owner of land, to build a house thereon, is entitled to a lien on the house and land. The court say: "The object of the provisions of the statute is to create and preserve to the laborer security for the payment of the wages which he earns. It is manifest, from a consideration of the provisions of the successive statutes in relation to the lien of mechanics upon the estates upon which their labor has been expended, that the legislature have regarded it as a sound and just principle, that all those who have by consent of the owner, or in pursuance of contracts with him for that purpose, contributed to increase the value of his property, should have an interest in it until their respective claims for such services shall have been paid and discharged."

In *White* v. *Miller*, 18 Penn. St. 52, it was held under the Pennsylvania statute, that one who furnished lumber and window sash to a contractor, to be used in the erection of a building, had a lien therefor. GIBSON, C. J., in delivering the opinion of the court, said : " As soon as owners of lots ceased to be their own builders, they put it in the power of persons employed by them to occasion losses to mechanics and material-men which they ought not to bear; and it was to remedy this mischief that the legislature established the principle that materials and labor are to be considered as having been furnished on the credit of the building, and not of the contractor. The principle is not only a just but a convenient one. Whether the builder be the agent of the owner or an independent contractor, his appointment to the job creates a confidence in him which was not had before; and the consequences of a false confidence ought not to be borne by those who had no hand in occasioning it. Nor does the rule of the legislature bear hard on the owner. He has it in his power to detain the price of the building while there are outstanding charges against it, or to stipulate for security against those that might afterwards turn up; and if he use

Colter *v.* Frese *et al.*

common prudence, any loss which occurs will eventually fall on the author of it.   If he do not, he cannot charge the mechanic or material-man with the consequences of his own supineness.   The adaptation of these lien laws was imperfect, and they worked ill for the owner at first; but, amended and expounded by experiencè, they work justly and well for all parties."   See, also, the case of *Lee* v. *Burke,* 66 Penn. St. 336. So also in New York, under a statute certainly no more explicit than our own, it is held that a sub-contractor may acquire a lien for work and materials, and that the owner cannot defeat the lien by a subsequent conveyance of the property.   *Blauvelt* v. *Woodworth,* 31 N. Y. 285.   See, also, *Morrison* v. *Hancock,* 40 Mo. 561; *McCrea* v. *Craig,* 23 Cal. 522.

In the case of *Sodini* v. *Winter,* 32 Md. 136, the court say, amongst other things, that "in a case like the present, of a material-man furnishing materials to a contractor to be used in the erection of a building, the law contemplates a contract of purchase between these two, and that credit may be given to the latter, and whilst there is no contract, express or implied, between the former and the owner, or credit given to the owner, yet the law provides a lien upon the building as a security for the material-man in case the contractor fails to pay for the materials, and this is done without affecting the liability of the contractor on his contract of purchase, which still exists.   Indeed, it was the liability to, and frequency of, loss sustained by mechanics and dealers in consequence of the employment of a middle-man or contractor which induced the legislature to give a lien on the building. Such being its character, and such the provisions of law for its enforcement, the mere fact that the materials were furnished on the credit of the contractor, and not on the credit of the building, is not, in our opinion, either a waiver or an extinguishment of the lien."   In the case last cited, proof was offered of payment in full by the owner to the contractor, but was rejected.   This was held to be no error.

There are other authorities tending more or less strongly

to sustain the lien, but we pass them over, and proceed to the examination of those which seem to be relied upon to sustain the opposite view.

The case of *Spaulding* v. *Thompson, etc., Society*, 27 Conn. 573, may be best stated in the language of the court in pronouncing the opinion. "The plaintiff," says the court, "by his bill seeks to foreclose a mechanic's lien, which he claims, on the ground of his having furnished materials and rendered services in the erection of the defendants' church edifice. It appears, however, that the work was not done at the request of the defendants, or even for their benefit. On the contrary, it was done against their express prohibition to the original contractors, and was also done after the contractors had been fully paid the contract price for the erection and completion of the whole church. Under such circumstances we cannot think the plaintiff entitled, as against the defendants, to any lien upon the church. It is true, the language of the act of 1855 is very broad, but it could not have been intended to create a lien against a party who has not contracted, either directly or indirectly, for the work, but, on the contrary, has expressly prohibited it." This case does not seem to us to militate essentially against the maintenance of the lien under a state of facts entirely different from those set forth.

The case of *Hollingsworth* v. *Dow*, 19 Pick. 228, involved nothing but a question of lien arising upon the principles of the common law, where a mechanic had been employed by a contractor to do certain work upon a machine, and has no application whatever to the question involved here.

In the case of *Whitney* v. *Joslin*, 108 Mass. 103, one Bourassa had taken a contract from Ebenezer L. Joslin to build a barn on land of his wife. Whitney & Sons had furnished Bourassa with materials, who commenced the work, but abandoned it before it was finished. Whitney & Sons then made a new contract with Emily J. Joslin, wife or widow of Ebenezer, whereby they agreed to finish the barn, etc., and she agreed, amongst other things, to pay them for the materials they had furnished to Bourassa. It

was held that if Whitney & Sons ever had any lien for materials furnished Bourassa, they had waived it by the new contract. This case in no manner conflicts with the construction we place upon the statute.

The case of *Wood* v. *Donaldson*, 17 Wend. 550, S. C., 22 Wend. 395, was this: One Russell contracted with Wood for the erection of a building, engaging to do the mason and carpenter work. Russell made a contract with Tingley, whereby the latter engaged to do the mason work of the building as a sub-contractor. Tingley absconded before the work was finished. Donaldson, the plaintiff in the cause, was employed by Tingley, and did work and furnished materials, for which he claimed to hold Wood under the lien law. The court say that the first section of the law gives color to the claim, but that the other sections of the act "clearly show, that this new and extraordinary remedy was intended to be limited to the persons employed by him who contracted with the owner. The second section provides that the owner shall furnish his contractor with a copy of the account, so that if there shall be any disagreement between him and his creditor, they may adjust the amount. By the next section, if the adjustment cannot be amicably made, they shall submit the difference to arbitrators; and the fourth section declares, that if the contractor shall not pay the sum found due to his creditor, with costs, the owner shall pay the same out of the fund in his hands; and in case of default it may be recovered in an action for money had and received, to the use of the creditor, etc. Nothing can be more explicit than these provisions, and they limit the right to or lien upon the funds of the contractor in the hands of the owner to his creditors—persons who have performed the work, etc., under a contract with him." We agree with the decision in the cause and all that was said by the eminent jurist delivering the opinion (NELSON, C. J.), but we fail to see that it has any application whatever to the case here. There is nothing in any of the sections that follow those hereinbefore set out that tends in the slightest degree to

qualify them in respect to the point here involved, or to show that the legislature did not intend that the persons therein mentioned should have a lien as therein provided for.

In the case of *McAlpin* v. *Duncan*, 16 Cal. 126, the statute under which the decision was made is not set out or stated. The court say: "We think all that can be gathered from this act is, that material-men, sub-contractors, etc., have a lien upon the property described in the act to the extent (if so much is necessary) of the contract price of the principal contractor; that these persons must give notice of their claims to the owner, or the mere existence of such claims will not prevent the owner from paying the contractor, and thereby discharging himself from the debt; that by giving notice, the owner becomes liable to pay the sub-contractor, etc. ( as on garnishment or assignment, etc.), but that if the owner pays according to his contract, in ignorance of such claims, the payment is good." The case does not seem to throw any light upon the question under consideration.

In the case of *Knowles* v. *Joost*, 13 Cal. 620, a statute is in part set out, which authorizes the owner, upon being served with proper notice, "to withhold from the contractor, out of the first money due, or to become due, to him, under the contract, a sufficient sum to cover the lien claimed by such sub-contractor, journeyman, or other person, performing labor or furnishing materials, until the validity of the lien shall be determined by the proper tribunals, if it be contested."

It was held that "it was not the design of the legislature to make him responsible, except upon notice, or to a greater extent, than the sum due to the contractor at the date of the notice." We do not perceive that the case is at all in conflict with the construction we place upon our statute. By the statute copied in the opinion in the case cited, it would seem that the rights of the parties were to be determined by the state of things existing at the time of notice. Not so, however, under our statute, inasmuch as, if the notice is filed within the time limited, the lien relates back, as before shown.

The case of *Jacobs* v. *Knapp*, 50 N. H. 71, was an action

of assumpsit for hauling wood, and a lien on the wood was claimed. The facts were that the wood belonged to the defendant, who had contracted with one Fifield to haul it. Fifield employed the plaintiff to haul it, there being no contract, express or implied, between the plaintiff and defendant. There was a statute which provided, that "any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services, which lien shall take precedence of all other claims except liens on account of public taxes, to continue sixty days after the services are performed, and may be secured by attachment." The court, after some discussion of the statute, say : " Upon the whole, therefore, we are inclined to the opinion that the lien of laborers in the class to which the plaintiff belongs can attach only in case and by virtue of a contract, express or implied, with the owner of the property upon which the labor is bestowed." In a previous portion of the opinion, the court, after having discussed the matter of liens in respect to buildings, says : " In such a case, to give not only the master-builder, but also all these various under-workmen, each an independent lien, without preference or precedence, upon the same property, would disastrously embarrass the useful construction of the work." This impracticability of giving separate and independent liens upon the same property, " without preference or precedence," would seem to be the chief ground for the construction adopted, for the court proceed immediately to say : " In short, there would seem to be no practicable rule by which to interpret this statute, other than one which should limit the subsistence of the lien to the party alone who specially contracts with the owner of the property upon which the labor of the contractor and all his sub-contractors is expended." But this difficulty is entirely obviated by our statute, which makes provision for making all persons having such liens parties to an action to enforce them ; and if the property should not sell for sufficient to pay all, the proceeds of the sale are to be apportioned to each according to the amount due him.

Sections 652, 653. The court, after speaking of the statutes of some other states, giving sub-contractors liens, say: "These provisions usually require, by way of proviso, that, if the work is done under contract with the owner, no person who may have done work or furnished materials for such contractor shall have the benefit of the lien, unless, within a prescribed time after his employment by the contractor, he shall give notice to the owner that he is so employed and will claim the benefit of the lien." It will be seen that the law in that case did not provide for any notice to the owner, which was, perhaps, a strong reason for adopting the construction placed upon it, while our statute provides for notice by filing it in the recorder's office. The court say further: "Such a law as we have indicated and have found in other jurisdictions would perhaps be of public advantage. It would tend to protect the laborer against the fraud, dishonesty, or insolvency of owners and contractors; but, if evils exist by reason of the present state of the law, the legislature alone can, and that body most effectually may, provide the remedy." We learn from a note to the case that the legislature subsequently took action upon the subject, but we have not seen the enactment. Taking the case in New Hampshire altogether, we are of opinion that it does not seriously conflict with the conclusion in the case before us.

It has been suggested that the statute, with the construction we place upon it, is unconstitutional, for the reason that the subject-matter is not expressed in the title. This we think was settled by the case of *Hall* v. *Bunte*, 20 Ind. 304. In that case, it was held that the statute giving the lien was one that conferred a remedy for a debt, and was valid. In that case, the debt was against the party against whom the lien was sought to be enforced. Here the debts are not, but this we think makes no material difference.

For these reasons, we are of opinion that the original plaintiffs and the cross complainants were entitled to their liens; and that the liens were not defeated by the payment to the contractors. It follows that the judgment below at general

term, reversing the judgments rendered at special term, was right, and must be affirmed.

The judgment below is affirmed, with costs.