<table>
<tr><td>24</td><td>113</td></tr>
<tr><td>42</td><td>60</td></tr>
<tr><td>24</td><td>113</td></tr>
<tr><td>48</td><td>327</td></tr>
</table>

FRANK COLPETZER ET AL., APPELLANTS, V. THE WARDENS AND VESTRYMEN OF TRINITY CHURCH ET AL., APPELLEES.

1. **Mechanic's Lien.** The lien secured to "Any person or subcontractor ".by the provisions of section 2, Chap. 59 of the Laws of 1881, entitled "An act to amend chapter 42 of the General Statutes, entitled, 'Mechanics' Liens,'" does not depend upon the terms of a contract or agreement expressed or implied with the owner of such house, etc., or his agent mentioned in the first section of said act.

2. ———. The above named act, *Held*, Not to be in derogation of the provisions of the constitution of the United States, which prohibits the several states from passing "any law impairing the obligation of contracts," by reason of its provisions being construed to apply to buildings already under contract at the time of the taking effect of said act, so as to give a lien thereon for all labor, skill, and material furnished therefor after the taking effect of said act.

8

APPEAL from the district court of Douglas county. Heard below before NEVILLE, J.

*W. J. Connell,* for appellants, cited: *Ballou v. Black,* 31 N. W. R., 673.   *Conn. Mut. Life v. Cushman,* 108 U. S., 51.   *Welch v. Wadsworth,* 30 Conn., 151.   *Satterlee v. Mathewson,* 2 Peters, 380.   *Dunwell v. Bidwell,* 8 Minn., 18.   *Jackson v. Lamphire,* 3 Peters, 290.   *Templeton v. Horne,* 82 Ill., 491.   *Jones v. Davis,* 6 Neb., 33.   *Tennessee v. Sneed,* 96 U. N. S., 69.   *State v. Graham,* 16 Neb., 74.   *Bronson v. Kinzie,* 1 How., 321.

*George W. Doane,* for appellees, cited:   *Green v. Biddle,* 8 Wheat., 1.   *McCracken v. Hayward,* 2 Howard, 608. *Bronson v. Kinzie,* 1 How., 311.   *Gantly's Lessee v. Ewing,* 3 How., 707.   *Willard v. Longstreet,* 2 Doug. (Mich.), 172.   *Rawley v. Hooker,* 21 Ind., 144.   Cooley's Const. Lim., pp. 275, 285, 289.

COBB, J.

This cause is brought to this court on appeal from the decree of the district court of Douglas county.

On February 24, 1883, the plaintiffs filed their petition in the court below, setting up that the wardens and vestrymen of Trinity Church, of Omaha, contracted with August Walbaum, on January 27, 1880, for the erection of the cathedral church building on the W. half of lot 2, and lots 3 and 4, in block 85 in said city, for the sum of $25,-000, due in four payments, according to the progress of the work, to be completed November 1st, following.   The contractor failing to comply with his terms, entered into a supplemental contract subsequent to May 19, 1881, extending the time, increasing the cost $3,400, and substituting the material for the completion of the building, and subsequently abandoned the work, as a failing contractor, with

the full knowledge of the wardens and vestrymen, who assumed to procure material, employ labor, and complete the building at an expense nearly double that of the contract price. The contractor placed the work in charge of Benjamin Melquist, as foreman, who was continued as such by the wardens and vestrymen to the completion of the building. There was furnished by plaintiffs, who are lumber dealers in Omaha, material for the building, on the order of the foreman, prior to May 1, 1881, amounting to $380, which was paid by the wardens and vestrymen from money yet due the contractor.

A second bill of $880.29 for like material, between May 1, and September 30, 1881, was presented to and considered by the wardens and vestrymen, and payment refused as that of a bill against the contractor, and not one to be paid by the church corporation. On this bill the action is brought.

A third bill for like material, subsequent to October 1, 1881, and subsequent to the withdrawal of the contractor, was paid by the wardens and vestrymen, which closed the parties' dealings.

On November 26, 1881, the plaintiffs proceeded to attach their lien, under section 2 of the act entitled, "An act to amend chapter 42 of the General Statutes of Nebraska, entitled 'Mechanics' Liens,'" approved February 28, 1881, for material furnished the Trinity Church building on lot 4 of block 85 in Omaha, amounting to the rejected bill $880.29, with notice in the proceedings to Trinity Church and to A. Walbaum & Co.

To the petition the wardens and vestrymen answered August 4, 1883, that they have no knowledge of the furnishing or use of the material as stated; they deny the allegations, and aver that whatever material was furnished was at the instance and on the credit of A. Walbaum, and not otherwise, and they are not liable.

II. They deny legal notice of the mechanic's lien, and

the legal steps to charge them or the church property with the material sold and delivered to A. Walbaum.

III.    They deny all knowledge that there is no dispute between the plaintiffs and Walbaum as to material furnished by plaintiffs to the contractor.

IV.    They deny there is due for material furnished Walbaum any sum, but that prior to this suit the plaintiffs assigned the account to W. J. Connell, who is the owner and holder thereof, and that the plaintiffs ought not to maintain their action.

V.    That by their contract with Walbaum he undertook to furnish the material for the church building, and to erect the same, and was liable to a forfeiture of compensation, at a specified date, on failure to comply with his stipulations; that he subsequently failed to comply, suspended the work, and withdrew as contractor, leaving them to assume the completion of the building at an increased cost and expense above that of the contract price; that there is nothing due the contractor, but he is largely indebted, by his failure, for the increased cost in the erection of the building; that they have, at no time, been indebted to the contractor since the delivery of said material by the plaintiffs and the filing of the account therefor.

The plaintiffs replied October 2, 1883, and denied that the material furnished and used in the church building was solely at the instance and on the credit of A. Walbaum, or that the wardens and vestrymen are in no way liable therefor.

They deny that at any time they transferred their interest in the account to W. J. Connell, or that he is the owner and holder thereof and entitled to any amount due thereon; and say they have no knowledge of, or means of knowing, the terms of contract between A. Walbaum and the wardens and vestrymen, and deny all allegations of the fifth paragraph of the answer. The defendant, Walbaum, made no answer.

There was a trial to a jury, to whom the following instructions were given in charge, and special findings submitted:

"I.   The plaintiffs in this action sue to foreclose what they allege to be a material man's lien upon the church property of the defendants.

"II.   The defendants answer and deny the existence of the alleged lien, and deny the furnishing of the lumber to and for the church, and fully deny the liability of defendants to pay for said material if the same was furnished as alleged.

"III.   Certain facts are submitted to you, and those facts alone you must pass upon.

"IV.   You are to find in your verdict the amount in value of the material furnished and delivered by plaintiffs to and at the defendants' church property at south-east corner of Capitol avenue and 18th street, in Omaha, Nebraska, under the alleged contract of the church with A. Walbaum, for use in the erection of said church building, which is in the alleged mechanic's lien sued upon.

"V.   You are also instructed to find the amount in value of the lumber and building material furnished under the contract charged in the alleged lien which actually went into the building contracted for.

"VI.   You are requested to find the date of the furnishing of the last item furnished, set forth in said items of the alleged lien.

"VII.   You are to be guided in finding said amount or value by the contract price, if any, and if no contract price between the plaintiffs and Walbaum, then the fair market value must govern you in arriving at the said value of said alleged material.

"VIII.   You are to take all the evidence and circumstances adduced in the case, and give such weight to the testimony of witnesses as you shall think right and proper."

Under which, the jury returned the following special verdict:

"We, the jury impaneled to try certain questions of fact as submitted by the questions hereinafter set forth, do find and answer said questions as follows, to-wit:

"*First.* Was the lumber and building material set forth in account attached to petition furnished and delivered by plaintiffs at the premises upon which Trinity cathedral was being constructed for the purpose of being used in said cathedral? Yes.

"*Second.* Was said lumber and building material so furnished and delivered in pursuance of a verbal contract and arrangement with A. Walbaum? Yes.

"*Third.* Were said items of lumber and material delivered at the several times and dates set forth, and upon a running and continuous account? Yes.

"*Fourth.* Were said items of lumber and material actually used in the construction of said cathedral building? Yes.

"*Fifth.* Are the prices as set forth in said account for said items of lumber and material the fair, reasonable market value thereof? Yes.

"*Sixth.* What was the date at which the last item on said account was furnished and delivered? September 30, 1881.

"*Seventh.* What amount do you find due plaintiff in said account for lumber and material furnished and delivered by plaintiff for the construction of said cathedral? Principal, $880.29; interest, $242.04; total, $1,122.33."

On the 5th day of May, 1886, the following finding and orders were by the court made in the case:

"The court being fully advised in the premises, finds the facts submitted to the jury to be as found by the verdict of the jury returned and filed herein, and that the said plaintiffs are the real parties in interest herein, and at the time the lumber and material were delivered for the church, and at no time thereafter, were the wardens and

vestrymen of the church indebted to Walbaum or Walbaum & Co.

"But the court finds as a matter of law that said plaintiffs are not entitled to maintain this action, or to recover any sum whatever herein."

Thereupon judgment was rendered for the defendants.

The cause is brought to this court by the plaintiffs on appeal. In support of their appeal the plaintiffs submit:

*First,* That the equities of the case are most strongly with the plaintiffs.

*Second,* That under the provisions of the act of 1881, the plaintiffs would be entitled to their lien without regard to the state of accounts between the defendants and their original contractor.

*Third,* That as to all materials so furnished *subsequent* to the going into effect of said act, the law of 1881 applies *without regard to the date of the contracts between Walbaum and the defendants.*

This proceeding to enforce the petitioners' lien against the Trinity Cathedral Church, of Omaha, for material furnished the contractor, is brought under section 14 of the act of February 28, 1881, entitled, "An act to amend chapter 42 of the General Statutes of Nebraska, entitled 'Mechanics' Liens,'" which provides that any person who shall hold a lien under the provisions of said act may proceed by petition in chancery against the owners of the building and the lot, and obtain such final decree for the rent and sale thereof as justice and equity may require. It provides for an equitable action under a directory statute, supplemental to the law and complemental to it, but comprehending special considerations of equal-handed justice to the complainants.

The policy of the amended statute is that of security to all creditors, for labor and material contributed to the improvement of real property, whether by the agreement of a contractor or by the implied agreement under circum-

stances of necessity and use.  Its purpose is to extend and fully protect the rights of mechanics and material men, in making the house and land, and not merely the consideration due the contractor, the warrant and security for the payment of wages and material.  That the legislature may impose that condition and liability upon landlords will hardly be disputed.  It is not a hardship or risk greater than that of mechanics and dealers, obliged to protect themselves from irresponsible or dishonest contractors for wages and material which enter into the betterments of the land and increase its value.

The validity of this act, under section 11 of article III. of the constitution of this state, was questioned in the case of *Ballou v. Black*, 17 Neb., 389, that the law failed to contain the sections of the original act so amended and repealed, and that its method of enactment by the legislature was not conformable to parliamentary law and constitutional requirement.  These objections were inquired into at the January term, 1885, on full argument, and the validity of the act was maintained, and the objections overruled for want of sufficient grounds.

At the same term it was held, in the case of *Foster v. Dohle*, 17 Neb., 631, "that the liability of the owner of a building which is being erected or repaired is not placed on the ground of a contract made with the owner by the person performing the labor or furnishing the material, because usually there is no such contract between them, and when there is, the right of the party to the lien is unquestioned, but upon the ground that as the labor or material contributed to the erection of the building is for the benefit of the owner, the law imposed upon him the responsibility, for at least sixty days, of seeing that the claims are paid.  One object of the legislature was to prevent collusion between the owner and the contractor, and thus protect those who have furnished material or labor to the building from being defrauded."

This doctrine was applied in *Marrener and Kimball v. Paxton*, 17 Neb., 634, at the same term, in which the court said that: "The question here involved is substantially that decided in *Foster v. Dohle*. We have no doubt that one furnishing materials in good faith for the erection of a building, under an agreement with a contractor for that purpose, may file a mechanic's lien upon the structure and the lots on which it stands. The lien is given, however, not upon the ground that a contract was made by the owner with such subcontractor, but because the material so furnished was used in the erection of the building. The furnishing of the material is notice to the owner of the rights of the party, and until the time for filing a lien has expired he is directly liable to such party for the value of the same. These views are neither original nor novel. They are held in many other states, and have entered into jurisprudence there, and, since the enactment of the present law, may be said to have gained a firm and legal settlement here." *Laird v. Noonan*, 20 N. W. R., 355. *White v. Miller*, 18 Pa. St., 52. *Colter v. Freese*, 45 Ind., 103. *Doe v. Munson*, 33 Me., 432. *Sheppard v. Steele*, 43 N. Y., 52. *Atwood v. Williams*, 40 Me., 409. *Russell v. Bell*, 44 Pa. St., 47. *Lee v. Burke*, 66 Pa. St., 339. *Gray v. Dick*, 97 Pa. St., 145.

The questions of fact as to the delivery and acceptance, and of the amount and value of the material contributed and supplied, having been settled in favor of the plaintiffs by the special finding of the jury in the court below, there remains the question of law, presented in the record, Are the plaintiffs entitled to maintain this action, or to recover any sum whatever herein?

The court below decided adversely, without adventuring upon the specific grounds. It may be presumed to have been in deference to the constitutional privileges of the wardens and vestrymen under their contracts with Walbaum. That the present law conferred nothing on the

plaintiffs, and imposed nothing on the defendants, repugnant to their agreements with each other; that the contracts with Walbaum were made with special reference to the former law, then in force; that its terms were supposed to be so engrafted upon and made a part of the contracts that no subsequent amendment to the law could affect the liabilities of the defendants without violating the constitutional provision that "no state shall pass any law impairing the obligation of contracts."

This theory is but a fortuitous escape from the terms of the law, but is recommended by defendant's counsel as "so in harmony with the principles of eternal justice as to require no argument in its support." Elaborate illustrations from the opinions of supreme courts are, however, brought forward and indulged in to demonstrate the strictly legal theory which, though ingenious and instructive as arguments, are not deemed relevant or apposite to the discharge of the liability of the defendants, or adverse to the plaintiffs' lien.

It appears in the case that the contract for the erection of the cathedral church building, within nine months, for the sum of $25,000, was an improvident contract, and was forfeited. It was renewed for twelve months, and for the sum of $3,400 additional, and was again abandoned by both parties.

The wardens and vestrymen meanwhile continued the work, without formally abrogating the contract, after the contractor had failed and was a bankrupt. He had given only sufficient attention to the work to employ mechanics and secure material, without paying for either. The wardens and vestrymen accepted of both, and used the material. The contractor's ability and responsibility, as well as the use of the material, were considerations, originally and continuous, for the wardens and vestrymen to have taken into serious account. The public protection and their own depended on it. They cannot equitably escape

that responsibility behind the organic remains of an improvident and abandoned contract.   The abandonment of the first party, and the equivocal policy and acts of the second party, satisfactory to both, and only repugnant to the creditors, go to the *bona fides* of the contract itself, so far as to divest it of that entity and legal significance which alone could make it an object of constitutional regard and protection.    It is, therefore, to be regarded as an insufficient and void obligation, within the meaning of the. prohibitory precept of the constitution, and as inadequate to support the theory of the defense or to oppose an objection to the plaintiffs' lien.

To the prevention of collusion against mechanics and contributing creditors the statute is pointed, and it seems to rebuke even the suspicion of it; and though collusion will not be maintained in this instance, there were equitable considerations that the wardens and vestrymen should have silenced controversy and complaint by discharging the obligation to the plaintiffs, which they refused.

The constitutional question raised by appellees is rather clearly stated by counsel for appellants in the following terms: "The most that can be said by the defendants is, that at the time they made their building contract, by virtue of statute then in force a lien against the proposed building was possible to the extent of any unpaid balance due Walbaum (the contractor); that afterwards a law was enacted making it possible for material men to obtain a lien, without regard to the state of Walbaum's account, for all material furnished and used on the building *after* the taking effect of the law; and that after such taking effect the plaintiffs did furnish certain materials, and the defendants, having used them, are now called on to see that the value thereof be paid."

Now does this imply the impairment of the obligation of the building contract, the contract between the defendants and Walbaum?   The right of the plaintiffs to a lien

upon the building of defendants, for building material furnished by them, and which was used in the construction of the said building, depends in no degree upon the terms of the said contract, nor upon the fact of there being such a contract in existence. The lien law of 1881 created a new relation between builders, on the one hand, and mechanics, laborers, and material men contributing skill, labor, and material to their buildings, on the other. But it is a relationship of law, and not of contract. This law by its terms is applicable to builders whose building enterprises were in course of progress at the date of its becoming of force, as well as those thereafter engaging therein, but does not disturb the contractual relations of such builders with other persons. With this view of the law, it must be held that the plaintiffs are entitled to a lien upon the building of the defendants, together with the lot upon which it is situated, for the value of the building material by them furnished after the first day of June, 1881, as found by the jury, together with interest thereon at seven per cent per annum.

The decree of the district court is reversed, and the cause remanded to that court with instructions to enter a decree for the plaintiffs in accordance with the above opinion.

REVERSED AND REMANDED.

THE other judges concur.