Caldwell, J.
The plaintiffs in error filed a petition in the court of common pleas, setting up in substance that the defendant, Jennie Madden, entered into a written contract with the defendant, H. A. Heinsath, some time prior to the 21st day of June, 1895, whereby the said Heinsath agreed to furnish all materials and labor necessary for the complete construction of a two-story frame house for her upon a parcel of land (fully described), in Cleveland, Ohio; said Jennie Madden agreed to pay therefore the sum of $2897.50 as the work progressed, the entire sum to be paid within sixty days from the date of the completion of said house. That said Heinsath fully performed said contract upon his part, and fully completed the house on July 1, 1895. That between June 1,1895, and June 21, 1895, the plaintiff furnished cer *341 tain material and performed certain labor necessary for putting a slate roof upon the same, as required by said contract, under a verbal contract with said Heinsath for the agreed sum of $131., said sum being the reasonable value of the work and material required to be performed and furnished in doing said work. Plaintiff says he completed said work on the 21st day of June, 1895, and the same was fully accepted by said Heinsath and by said Jennie Madden; that said sum of $131.00 is due and unpaid, and the defendants refuse to pay the same. On the 11th day of July, 1895, the plaintiff duly filed with the Recorder of Cuyahoga county, Ohio, under the statutes providing for obtaining a mechanic’s lien, an affidavit containing an itemized account of the amount and value of said material and labor, with all credits and offsets endorsed thereon, with a copy of the contract under which said work was done and said material furnished, and a description of the premises. The petition avers the record of the lien, and claims a lien, and asks for a foreclosure of the same. The answer of Jennie Madden admits the contract under which the house was built for her, and avers that said contract, among other things, provided that the said Heinsath should and he did thereby waive any and all right of placing a lien upon said premises for labor performed or material furnished for said building, and provided that no lien or liens should be placed thereon for labor performed or materials furnished therefor by himself or others under him, and contests the right of the plaintiff to any lien on said premises. It is conceded that the contract between said Jennie Madden and the plaintiff was after and some time after April 13, 1894. The plaintiff demurred to the said answer on the ground that it did not state a defense. The demurrer was overruled, and judgment was rendered in favor of Jennie Madden. It is claimed by defendant in error that the overruling of the demurrer was right, because the answer states a good defense; and if it does not, it was *342 good as to the petition, because it states no cause of action good in law. There are two questions in the case:
1. The constitutionality of the amendment of the Mechanic’s Lien Law as found in 911,0. L. 135.
2, Can the owner and contractor by contract deprive the material man of a lien on the premises for which he has furnished material under a contract with the contractors?
Sec. 3184 in the Act, 91 O. L. 135; is:
‘A person who performs labor, or furnishes machinery or materiarfor constructing, altering or repairing a boat, vessel or other water-craft, or for erecting, altering, repairing or removing a house, mill, manufactory, or any furnace or f-urnace material therein, or other building, appurtenance, fixture, bridge or other structure, or for the digging, drilling, plumbing, boring, operating, completing or repairing of any gas-well, oil-well or any other well, or performs labor of any kind whatsoever, in altering, repairing or constructing any oil-derrick, oil-tank, oil or gas pipe-line, or furnishes tile for the drainage of any lot or land by virtue of a contract with, or at the instance of the owner thereof or his agent, trustee, contractor or subcontractor, shall have a lien to secure the payment of the same upon such boat, vessel or other water-craft, or upon such house, mill, manufactory or other building or appurtenance, fixture, bridge or other structure, or upon such gas-well, oil-well or any other well, or upon such oil derrick, oil-tank, oil or gas pipe-line and upon the material and machinery so furnished, and upon the interest, leasehold or otherwise, of the owner in the lot or land on which the same may stand, or to which it may be removed. ’ ’
And sec. 3185a reads:
“In all cases where labor, material or machinery referred to in sections 3184 and 3185, shall be furnished by any person other than the original contractor, with such ownér or his agent or trustee, the lien shall not exceed the actual value of the labor, material or machinery so furnished, and the aggregate amount of liens for which the property may be held shall not, in the absence of fraud or collusion between *343 the owner and original contractor, exceed the amount of the price agreed upon between the owner and original contractor for the performing of such labor and the furnishing of such material and machinery. Provided, if it shall be made to appear that the owner and contractor, for the purpose of defrauding said subcontractors, material men or laborers, fixed an unreasonably low price in the original- contract for any work or material for which a lien is given under section thirty-one hundred and eighty-four, the court shall ascertain the difference between such fraudulent contract price and a fair and reasonable price therefor, and such subcontractors, material men and laborers shall have a lien to the amount of such fair and reasonable price so ascertained.”
It is claimed that in so far as this act undertakes to give to anyone who has furnished material to the contractors under a contract with him, a lien upon the premises is unconstitutional, because if the owner pays the contractor in full the contract price before the building is erected or during its erection, or any part of the contract price, still laborers who have worked upon the building and material men who have furnished materials for the same may charge the property with liens to the extent of the contract price, or even more if the contractor undertook the work for less than its true value. It is claimed that the material man under the statute can subject the owner’s property to a lien for materials not called for under the contract between the owner and his contractor if the same are ordered for the building, and used in the same, by the contractor. That these provisions of the statute deprive the owner of the right to own, possess, enjoy and contract in regard to his property as guaranteed to him by the highest law of the state. The law of the land where a contract is made, enters into the contract and forms a part of the same, and the scope and effect of the contract is determined by the law; and where, as in this case, a contract is entered into after the passage of a law on the subject-matter of the contract, that law enters into the contract and becomes olbigatory upon the parties *344 thereto. This rule has been repeatedly recognized by the Supreme Court of Ohio. In Smith v. Parsons, 1 Ohio, 236, the court say: “The legislature has a right, by law, to regulate contracts, to determine their effect, and point out the mode of their discharge. These laws are applied to all subsequent engagements, and fix the rights of the parties at the very instant the contract is closed. So that the contract in its inception, receives an impress from the law, and the effect of the law being co-extensive with the contract, can never be said to alter* or. impair it. It continues what it was at its commencement, and it is more correct to say that the law has in part made the contract, than it has changed it.” “Parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed part of the contract.”
In Weil v. The State, 46 Ohio St. 450, it is said: “The obligation of a contract is the duty which the law, at the time of making it, imposes upon the parties.” Also: “The statute, when applied to contracts made after its adoption, does not divest the owner of his property without his consent. * * * After the enactment of the statute prescribing the effect of tne contract specified in it, and fixing the rights of parties thereto, the defendant was at liberty to enter into such a contract, or not; and having entered into it, the provision of the statute prescribing his rights, duties and liabilities under it, become obligatory upon him of his own choice. ”
This being the law, it next becomes important to see how far constitutionally laws may be imposed into contracts. It would seem to be a reasonable rule that this may be done to any extent in a class of contracts where the rights of those not parties to the contract are affected by it, so long as the parties to the same are not deprived of lawful means of protecting their rights and property. That the provisions of the law in such cases may be inconvenient is no cause why *345 it may not be applied to contracts. It is only when the laws put into contracts of this nature, terms, conditions and limitations which take from a party all means of protecting his. rights and property, that they become unconstitutional. This rule is well stated in Mallary v. La Crosse Abbattoir Company, 80 Wis. 170: “The power of the legislature to attach binding incidents and obligations to certain contracts is limited to cases wherein The statute which attaches the obligation at the same time gives to the party upon whom i is laid, adequate means of protection against the consequences of it. ”
It only remains to determine, by the premises thus far established, the nature of the provisions of this law, and how far they take from the owner every reasonable means of protecting and saving to himself his rights and property, The intent of the law is clear. Its imposition oí duties upon the owner is manifest. How can he save himself from loss of his rights and property under it? Whoever contributes labor or materials toward the erection of a house upon land, contributes to the owner of the land by way of a fixture which, as fast as contributed, adds to and merges into the fee of the owner. While the owner is being thus enriched by the labor and materials of others, which becomes his as fast as furnished, it is eminently just that those enriching him should have some security. The statute undertakes, upon the consent of the owner that the improvement be made upon his land, to secure by lien those'who aid in the improvement. This is equitable, remedial, and hence the statute should be liberally construed. Liberal toward the end it was intended to accomplish. It may be that hardships will occasionally result to land owners from the application of this law, but this objection can be raised to many other laws; that hardships would result to others without such law, is equally clear. Without this law, the loss would often fall on those whose labor and materials have enhanced *346 the value of the property. Under the law the latter can enforce payment for the reasonable value of their labor and materials in the building to the contract price of the same. The owner can recover from the contractor, or he may take a bond to indemnify himself. He puts the contractor in charge, holds him out as worthy of credit. Under such circumstances the legislature has thought that if either must lose, it should be the owner. He selects the contractor, gets the benefit of the improvement. The purpose of the statute seems to be to protect those whose labor or material has enhanced the value of the property against the fraud, injustice and misfortunes of a middle-man at whose instance the same were furnished. It cannot be successfully claimed that a law is unwise, unjust or unconstitutional, which prevents an owner from getting the labor and material of others through a contractor without their getting pay for the same. The owner has ample means of protecting himself. He need not employ an intermediate. If he does, he can protect himself by taking an indemnity bond, or by paying the subcontractors, laborers and material men himself. Several avenues of escaping loss are left open to the owner, and hence, if he loses, it is his own want of precaution. The owner knows, when he makes his contract, the provisions of the law that enter into the contract and form a part of it. He knows that the contractor cannot do all the work himself. He knows the materials will be furnished by others. He knows the rights of those performing the labor and furnishing materials to a lien. He obtains the benefit of the labor and material. He knows the statute does no more than to subject his property to liens for debts which he has directly or indirectly authorized.
Where the owner knows all these things, and knows that there is a wise and remedial purpose in the statute, he cannot lawfully claim the same is unconstitutional, because it works to him nothing more serious than inconvenience, un *347 less he has failed to protect himself as he may do by law. It is urged that the owner may, under the statute, be corripelled to pay for materials he never contracted for. Whether this could be so or not, it is enough here to say that if he does, it is his own fault. If he stands by and keeps silent while his contract is being violated, he should not be permitted to speak when by doing so hé may injure those not responsible for the injury done him. We hold the statute to be constitutional. In this we are sustained by numerous authorities. 3 So. Da. 361; 2 So. Da. 577; 80 Wis. 170; 16 R. I. 698; 9 Mont. 113; 97 Mo. 47; 81 Cal. 170; 90 Tenn. 466; 17 Neb. 631; 24 Neb. 113; 8 Va. 821; 85 Me. 357; 162 Mass; 593; 14 Nev. 24; 45 Ind. 96.
To these might be added other cases and other states. The only states holding such a law unconstitutional are Pennsylvania and Michigan.
2. Is the provision of the contract between the owner and contractor that there shall be no liens placed on the premises by the contractor or anyone under him, binding upon laborers and material men ?
The basis of the claim, that this provision of the contract prevents the plaintiff from having a lien in this case, is, that the statute gives the lien where there is a contract between the owner and the contractor, and this contract being the foundation upon which the lien of the subcontractor is based, the subcontractor, laborer and material men are bound by. all the terms of the contract. The statute provides the lien to all persons who perform labor or furnish material by virtue of a contract with the owner or at the instance of the owner thereof, or his agent, trustee, contractor or subcontractor. The statute seems to give importance to the contract only as giving consent of the owner that the improvement be made on his land.
The statute gives to laborers and material men a direct lien, not through any rights the contractor may have, but *348 direct upon the consent of the owner to the improvement on his land, and the performing of labor or the furnishing of materials. This right is by virtue of the statute,, and the statute puts this right into every building contract the owner makes, and into very consent he gives for the erection of a structure for him on his land. If then, the law makes these rights a part of the contract, as much as though written therein, what rights have the owner and contractor to strike them out and write the very opposite in without the assent of the laborer and material men? This cannot be done wthout their assent. This being a positive statutory right,it cannot be taken from those who were intended to be benefited by it without their assent being clearly shown. To take-from them this right by implication, would be construing a remedial statute intended for their benefit, most strongly against them. This cannot be done without violating an elementary rule of construction. Norton v. Clark, 85 Me. 357; 2 Jones’ Liens, sec. 1304; 11 Allen, 152; 56 Mo. 487; 54 Md. 71.
Dickey, Carr & Goff, for plaintiff in error.
Kline & Tolies, for defendant in error.
We hold that the petition states a good cause of action, and the answer of Jennie Madden states no defense to the same.
The court of common pleas erred in overruling the demurrer to the answer of Jennie Madden and rendering judgment in her favor. The judgment is reversed, and the case is remanded to the court of common pleas for .further proceedings.