**AUTOXCHANGE.COM, INC. and Donald Tabor, Appellant–Third Party Plaintiffs,**

v.

**DREYER AND REINBOLD, INC., Appellee–Third Party Defendant.**

No. 49A05–0402–CV–108.

Court of Appeals of Indiana.

Sept. 15, 2004.

Publication Ordered Oct. 8, 2004.

As Amended Nov. 19, 2004.

---

Jennifer L. Graham, Indianapolis, IN, Attorney for Appellant.

Scott R. Leisz, Brad R. Maurer, Bingham McHale LLP, Indianapolis, IN, Attorneys for Interested Party/Trial Court Plaintiff Automotive Finance Corporation.

Donn H. Wray, David I. Rubin, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Third Party Plaintiffs, AutoXchange.com, Inc. (AutoXchange) and Donald Tabor (Tabor) (collectively, Appellants), appeal the trial court's denial of their motion to strike and award of partial summary judgment in favor of Appellee–Third Party Defendant, Dreyer & Reinbold, Inc. (Dreyer & Reinbold).

We affirm and remand.

### ISSUES

Appellants raise four issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erred in denying Appellants' motion to strike certain portions of Dreyer & Reinbold's supplemental designation of evidence in support of its motion for summary judgment; and

2. Whether the trial court erred in awarding partial summary judgment in favor of Dreyer & Reinbold.

### FACTS AND PROCEDURAL HISTORY

■ At the outset we note that significant portions of Dreyer & Reinbold's appellate brief are dedicated to responding to Appellants' factual allegations. Interested Party–Plaintiff, Automotive Finance Corporation (AFC), even felt compelled to submit an interested party brief replying to Appellants' inaccuracies and unsupported assertions as included in the statement

of facts.[1] Instead of directly responding to the respective parties' arguments, we have reviewed the record, evidence, and briefs; and accordingly base this statement of facts on our reading of the designated materials.

In March of 2001, Dreyer & Reinbold, an automobile retailer operating several locations in and out of Marion County, Indiana, purchased three automobiles from AutoXchange for a total amount of $148,208. During the negotiations leading up to this transaction, Dreyer & Reinbold dealt solely with Scott Ellingwood (Ellingwood), AutoXchange's corporate officer and minority shareholder. Tabor was AutoXchange's corporate president and majority shareholder.

At Ellingwood's request, Dreyer & Reinbold paid the purchase price directly to AFC, AutoXchange's floorplan lender and secured creditor, which would ensure Dreyer & Reinbold's receipt of free and clear title to the vehicles. Dreyer & Reinbold's payment to AFC was credited to AutoXchange's account by AFC following receipt of the purchase price. Under the terms of the financing agreement between AutoXchange and AFC, AutoXchange was required to hold the proceeds of the sale of any floorplanned vehicles in trust for AFC, and to transfer those proceeds to AFC within forty-eight hours of the sale.

On March 23, 2001, AFC filed for and obtained an Order of Prejudgment Replevin. On March 26, 2001, Appellants filed, among others, a Verified Third Party Complaint against Dreyer & Reinbold. On October 6, 2003, Dreyer & Reinbold filed its Motion for Partial Summary Judgment, together with its brief in support of its motion and designation of evidence. Thereafter, on December 9, 2003, AutoXchange filed its brief and designated evidence in opposition to Dreyer & Reinbold's motion for partial summary judgment. Subsequently, on January 5, 2004, Dreyer & Reinbold filed its reply brief and supplemental designation of evidence.

On January 20, 2004, Appellants filed their motion to strike portions of Dreyer & Reinbold's designation of evidence and supplemental designation of evidence. Dreyer & Reinbold filed a reply to this motion on January 23, 2004. On January 27, 2004, the trial court conducted a hearing on Dreyer & Reinbold's motion for partial summary judgment. Consequently, on February 10, 2004, the trial court issued an Order granting partial summary judgment in favor of Dreyer & Reinbold, and certified the order as a final judgment. On that same day, the trial court also issued an Order denying Appellants' motion to strike.

Appellants now appeal both Orders. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. *Waiver*

■ It is well settled that the duty of presenting a record adequate for intelligent appellate review on points assigned as error falls upon the appellant, as does the obligation to support the argument presented with authority and references to the record pursuant to App. R. 46(A)(8).

---

1. We hereby deny Appellants' Motion to Strike AFC's brief, filed on June 9, 2004. In their motion, Appellants allege that AFC has no standing to file an interested party brief because AFC does not have an issue in this appeal and none of AFC's interests will be affected by the outcome of this appeal. However, Ind. Appellate Rule 17 clearly states that a party of record in the trial court shall be a party on appeal. Since AFC was a party of record in the trial court, we hold that AFC can be a party on appeal. *See* App. R. 17. Therefore, we refuse to strike AFC's filing.

*See, e.g., Lasater v. Lasater,* 809 N.E.2d 380, 389 (Ind.Ct.App.2004); *Dawson v. State,* 612 N.E.2d 580, 583 (Ind.Ct.App. 1993). In this regard, Appellants' brief and reply brief are highly inadequate and fall well short of this requirement. Examination of Appellants' briefs reveal that not only do Appellants fail to address this court with cogent reasoning, none of their contentions are supported by citations to authorities or relevant parts to the record and therefore amount to nothing more than mere rambling allegations. *See* App. R. 46(A)(8)(a). Accordingly, we have the authority to waive Appellants' entire argument. *See id.* However, waiver notwithstanding, we will attempt to address the merits of Appellants' claims.

## II. *Interlocutory Appeal*

Appellants first contend that the trial court abused its discretion by denying their motion to strike certain portions of Dreyer & Reinbold's designated evidence in support of its motion for partial summary judgment. Specifically, Appellants claim that Dreyer & Reinbold's designation fails in specificity and authentication.

We first observe that the trial court never certified its Order denying the motion to strike as a final judgment, nor did Appellants seek certification of the Order pursuant to Ind. Trial Rule 54(B) or App. R. 14. Nevertheless, as this court observed in our grant of this interlocutory appeal on May 3, 2004, we cannot decide the trial court's award of partial summary judgment unless we know what evidence was designated for review to the trial court. Therefore, we will examine Appellants' contention.

Indiana Trial Rule 56(C) requires each party to a summary judgment motion to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." This designation requirement promotes the expeditious resolution of lawsuits and conserves judicial resources by relieving the trial courts from the burden of searching the record when considering summary judgment motions. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind. 1993). More significantly, T.R. 56(H) specifically prohibits appellate courts from reversing a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

The language of T.R. 56(C), however, permits the parties to determine how to designate, which has engendered a lack of consensus both with the bench and bar as to what must be done to designate evidentiary materials to the trial court in support of or in opposition to a motion for summary judgment. *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 615 (Ind.Ct.App. 1994). Nevertheless, consensus is clear that the rule requires specificity. *Id.* Thus, designating pleadings, discovery materials, and affidavits in their entirety will fail to meet the specificity required by T.R. 56(C). *Id.* Even if entire portions of the record are designated, however, the designation will not fail for lack of specificity if more detailed references to the record are provided in accompanying memoranda. *Abbott v. Bates,* 670 N.E.2d 916, 922 (Ind. Ct.App.1996), *reh'g denied.*

Appellants first allege that Dreyer & Reinbold designated its brief and reply brief in their entirety as support of the motion, thereby violating the specificity requirement of T.R. 56(C). Although we

agree that T.R. 56(C) mandates that designated evidence must be specifically detailed, the manner in which a party chooses to designate material is not mandated. *See Ling v. Stillwell,* 732 N.E.2d 1270, 1276 (Ind.Ct.App.2000), *trans. denied.* A party satisfies T.R. 56(C) if it specifies evidence in a summary judgment motion, separate filing of designation, or in a memorandum in support or opposition to the motion for summary judgment. *Id.* Our review of Dreyer & Reinbold's brief and reply brief in support of its motion for summary judgment reveals that these briefs clearly satisfy the specificity requirement of T.R. 56(C). Regardless that Dreyer & Reinbold designated their entire briefs as supporting evidence, both briefs include page and paragraph numbers clearly referencing the specific material upon which they rely. This specific material is then also listed in a separate filing of designation. Further, we have held that "as long as the trial court is apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered." *National Bd.,* 645 N.E.2d at 615. We are hard-pressed to see how Dreyer & Reinbold could have been more specific in apprising the trial court than by providing page and paragraph numbers. Thus, we conclude that Appellants' first argument is devoid of merit.

Next, Appellants claim that some exhibits designated by Dreyer & Reinbold in their filing of designation are not authenticated or certified. Specifically, Appellants focus our attention on an uncertified copy of a promissory note, an amendment to the promissory note, and unauthenticated copies of checks from AFC to Dreyer & Reinbold in payment for vehicles AutoXchange purchased from Dreyer & Reinbold. Our review discloses that the promissory note and its amendment were submitted to the trial court without objection during its replevin hearing. Further, Appellants included these same exhibits as part of their own designated evidence in response to Dreyer & Reinbold's motion for summary judgment. Once evidence has been designated to the trial court by one party, that evidence is deemed designated and the opposing party need not designate the same evidence. *Powell v. American Health Fitness Center of Fort Wayne, Inc.* 694 N.E.2d 757, 759–60 (Ind.Ct.App.1998). Regardless whether Dreyer & Reinbold submitted properly authenticated materials, since Appellants designated the same promissory note and its amendment as evidence in support of its response to the motion for summary judgment, Dreyer & Reinbold could properly rely and refer to this evidence. *See id.*

Furthermore, the record shows that the checks Appellants now attempt to strike, were originally produced to Appellants as part of Dreyer & Reinbold's responses to the first set of interrogatories and request for production of documents. This response included a verification from an authorized representative of Dreyer & Reinbold, stating that he "hereby swear[s] or affirm[s] under the penalties for perjury that the foregoing representations are true and correct under the best of [his] knowledge and belief." (Appellants App. p. 314). Thus, a certified copy of the check was served on Appellants. Moreover, the record reflects that Dreyer & Reinbold's responses to the interrogatories and request for production were submitted to the trial court as part of Appellants' designated evidence. Since Appellants themselves submitted a copy of the check as part of its own designated evidence, they are now prohibited from objecting to the admission of this evidence by the trial court.

Finally, Appellants claim that since T.R. 56 does not mention supplemental designation of evidence, Dreyer & Reinbold's supplemental designation of evidence in support of its reply brief to Appellants' opposition to the motion for summary judgment should be stricken from the record. Again, we find Appellants' argument to be unavailing. T.R. 56(C) provides that "at the time of filing the motion or response," a party shall designate all evidence on which it relies. Here, Dreyer & Reinbold's supplemental evidence was part of its reply to Appellants' brief requesting the trial court to deny the motion for summary judgment. Therefore, pursuant to the rule, Dreyer & Reinbold was allowed to designate evidence supporting its reply. The mere fact that Dreyer & Reinbold characterized its designation of evidence in its reply brief as supplemental designation of evidence is irrelevant for the purpose of T.R. 56(C).

Based on the evidence before us, we conclude that Dreyer & Reinbold properly designated its evidence in support of its motion for summary judgment. *See* T.R. 56(C). Accordingly, we find that the trial court did not err in denying Appellants' motion to strike.

### III. *Summary Judgment*

Appellants contend that the trial court erred by granting Dreyer & Reinbold's motion for partial summary judgment. Initially, we note that at the trial court, Appellants alleged a myriad of claims in tort against Dreyer & Reinbold as part of their third party complaint, which included: (1) a request for mandatory injunctive relief;[2] (2) wrongful diversion and misappropriation of corporate funds; (3) fraud; (4) intentional and malicious interference with a business relationship; (5) intention-

al infliction of emotional distress; and (6) unfair business practices.

On appeal, Appellants assert that their third party complaint also raised the following claims against Dreyer & Reinbold: (1) breach of implied contract; and (2) conversion. A careful review of Appellants' third party complaint clarifies that Appellants never asserted a breach of implied contract. Additionally, the complaint only asserted a claim of conversion against AFC and Ellingwood, not against Dreyer & Reinbold. As a general rule, a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court. *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind.Ct.App.2002). Consequently, since Appellants did not raise the claims of breach of implied contract and conversion to the trial court, these issues are now waived for our review. *Id.*

### A. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. T.R. 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 783 (Ind.Ct.App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that

---

**2.** Since the emergency has ceased, Appellants now concede that mandatory injunctive relief is no longer an issue. Therefore, we will not address this argument.

the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986).

■ We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Watters v. Dinn,* 633 N.E.2d 280, 285 (Ind.Ct.App.1994), *trans. denied.* However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### B. *Agency Authority*

Appellants' litany of causes of action against Dreyer & Reinbold all stem from one event: Dreyer & Reinbold's payment to AFC at Ellingwood's request. In this vein, Appellants first maintain that the trial court erred in its award of partial summary judgment in favor of Dreyer & Reinbold on the basis of apparent and inherent agency authority. Specifically, Appellants insist that under the circumstances, Dreyer & Reinbold did not act in good faith when it complied with Ellingwood's instructions to transfer the purchase price for the vehicles directly to AFC.

■ Our established case law recognizes a difference between apparent agency authority and inherent agency authority. An agent possesses apparent authority when a third person reasonably believes the agent possesses authority due to some act by the principal. *Scott v. Randle,* 697 N.E.2d 60, 67 (Ind.Ct.App. 1998). Whereas the focus of apparent authority is the reasonable belief of the third

party, inherent authority refers to acts done on the principal's account which accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the third party reasonable believes that the agent is authorized to do them and has no notice that he is not so authorized. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1212 (Ind.2000).

■ In *Scott,* we stated that placing an agent in a position to act and make representations which appear reasonable is sufficient to endow him with apparent authority. *Scott,* 697 N.E.2d at 67. However, we also added that a communication of authority made solely by the agent is inadequate, instead it is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. *Id.* In the present case, Ellingwood was a corporate officer and minority shareholder of AutoXchange, and was authorized to sell vehicles. The designated evidence shows Ellingwood to be Dreyer & Reinbold's sole contact at AutoXchange and sole negotiator for sale terms. Despite Dreyer & Reinbold's claim that Ellingwood's request to submit payment directly to AFC was reasonable, this communication was made by Ellingwood personally, and not by his principal, AutoXchange. *See id.*

Nevertheless, when a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal. *See id.* In such instance, the conduct of the principal, although indirect, constitutes the requisite manifestation or communication. *Id.* This is exactly the case here. Ellingwood's sole negotiating position in the commercial transactions with Dreyer

& Reinbold resulted in an indirect manifestation by AutoXchange which could reasonably be relied upon by Dreyer & Reinbold. As a result, we conclude that Ellingwood had apparent authority to instruct Dreyer & Reinbold to make payment directly to AFC.

■ Furthermore, Ellingwood also possessed inherent agency authority during his discussions with Dreyer & Reinbold. Distilling inherent authority to its basics, we have to analyze whether: (1) Ellingwood acted within the usual and ordinary scope of his authority as corporate officer and sole negotiator; (2) Dreyer & Reinbold reasonably believed Ellingwood was authorized to dictate the payment terms in this commercial transaction; and (3) Dreyer & Reinbold had no notice that Ellingwood was not so authorized. *See Menard,* 726 N.E.2d at 1212; *see also Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299, 1304 n. 7 (Ind.1998), *reh'g denied.*

In examining whether Ellingwood acted within the usual and ordinary scope of his authority, we find that the record supports that Ellingwood, as corporate officer and minority shareholder, was authorized to sell vehicles. Additionally, since Ellingwood was the sole negotiator of the transactions between AutoXchange and Dreyer & Reinbold, we conclude that the formulation of payment terms was a necessary accompaniment to the ordinary scope of Ellingwood's authority.

Next, we determine the reasonableness of Dreyer & Reinbold's belief that Ellingwood had the authority to instruct the payment to be made directly to AFC. Because the inherent agency theory "originates from the customary authority of a person in the particular type of agency relationship," we examine the agent's indirect or direct manifestations to find whether Dreyer & Reinbold's reliance on Ellingwood's authority was reasonable.

*See Menard,* 726 N.E.2d at 1214; *Koval,* 693 N.E.2d at 1304 n. 7. The record shows that from AutoXchange's inception, Ellingwood served as a corporate officer and minority shareholder. During all commercial transactions with Dreyer & Reinbold, Ellingwood held himself out as the sole negotiator and only contact with AutoXchange. Considering that AutoXchange placed Ellingwood in the position of corporate officer and sole negotiator, we conclude that Dreyer & Reinbold should not be required to scrutinize too carefully the mandates of this agent, who did nothing more than what is usually done by a corporate officer. *See Menard,* 726 N.E.2d at 1214 (citing Restatement Second of Agency § 161 cmt. A). Therefore, we find it reasonable that Dreyer & Reinbold did not question Ellingwood's instruction to transfer the purchase price of the vehicles directly to AFC.

Finally, we analyze whether Dreyer & Reinbold had notice that Ellingwood was not authorized to change the payment terms in this particular purchase. The trial court did not mention any evidence, nor does our review of the record reveal any indication that Dreyer & Reinbold was aware of the alleged limitations to Ellingwood's authority as a corporate officer. Appellants mere statement that Dreyer & Reinbold knew or should have known that Ellingwood lacked the requisite authority does not make it so. Thus, based on the foregoing, we conclude that Ellingwood had inherent authority to request Dreyer & Reinbold to transfer the purchase price for the vehicles directly to AFC.

However, Appellants contend that Ellingwood's reason to change the payment terms, *i.e.,* so Dreyer & Reinbold could receive clear and free title to the vehicles, should logically have put them on notice that Ellingwood did not have inherent agency authority to direct AutoXchange's

funds. Thus, Appellants argue, Dreyer & Reinbold failed to act in good faith by not investigating whether Ellingwood had AutoXchange's authorization for changing the payment terms. We are not persuaded. According to Appellants' assertion, anyone dealing with a corporate agent would be required to determine the identity of the corporate officers and their hierarchy in the corporation and then seek confirmation of the corporate officer's authority from the highest ranking officer each time this corporate officer makes a reasonable request during a regular commercial relationship. Affirming Appellants would then effectively impede commerce and result in a paralysis of speedy business transactions with repeated inquiries and attempts to contact corporate executives who would become flooded with requests for numerous confirmations of authority. This would completely defeat the purpose of agency law.

Further, Appellants insist that Dreyer & Reinbold's direct transfer of $148,204 to AFC resulted in an overpayment of AutoXchange's account with AFC because they only owed $103,456 and in the loss of use of the funds by AutoXchange. In support of their claim Appellants focus on a cancelled check from AutoXchange to AFC in the amount of $103,456. Our review reflects that the funds paid by Dreyer & Reinbold were properly credited to AutoXchange's financing obligation to AFC pursuant to the terms of the financing agreement. The language of the agreement explicitly requires that once a vehicle financed by AFC is sold, AutoXchange must repay AFC within forty-eight hours of the transaction. Accordingly, pursuant to the terms of the financing agreement, we fail to see what use, if any, AutoXchange could have made of the funds dur-

ing this very limited time period even if Dreyer & Reinbold had remitted the funds to Appellants, rather than AFC.

Moreover, the March 14, 2001 Floorplan Status for AutoXchange indicates that the total amount owed by AutoXchange to AFC was $188, 452.20. This debt excludes the amount of $148,204 covering Dreyer & Reinbold's purchase, which was already credited towards AutoXchange's balance. Thus, Appellants' actual debt was greater than the cancelled check's amount of $103,456. Therefore, we concur with the trial court that no overpayment occurred.

Based on the foregoing, we conclude that Ellingwood possessed apparent and inherent agency power on which Dreyer & Reinbold could reasonably rely when complying with his request to transfer the purchase price directly to AutoXchange's floorplan lender. These funds were immediately credited towards AutoXchange's balance and resulted in diminishing AutoXchange's debt to AFC. We disagree with Appellants that any damage or overpayment of their account occurred. Accordingly, we find that the trial court did not err in its award of partial summary judgment in favor of Dreyer & Reinbold on the basis of apparent and inherent agency authority. *See* T.R. 56(C).

### C. *Fraud*

 Next, Appellants allege that the trial court erred in its award of summary judgment in favor of Dreyer & Reinbold on the basis that no fraud or fraud by omission could be established. Although we accept Dreyer & Reinbold's argument that Appellants' third party complaint fails to include specific allegations of fraud on the part of Dreyer & Reinbold and therefore should be disregarded under T.R. 9(B),[3] we nevertheless will address the ar-

---

**3.** T.R. 9(B) states that in all averments of fraud or mistake, the circumstances constitut-

ing fraud or mistake shall be specifically averred. This mandate is equally applicable

gument since the trial court provided us with an elaborate conclusion of law.

■ In support of their common law fraud claim, Appellants maintain that Dreyer & Reinbold willingly participated in Ellingwood's fraudulent scheme when it diverted the purchase price for the vehicles from AutoXchange to AFC. To successfully sustain an action for common law fraud, a party must prove five essential elements: (1) a material misrepresentation, (2) of past or existing facts, (3) the falsity of the representation, (4) the representation was made with knowledge or reckless ignorance of its falsity, (5) and detrimental reliance on the representations. *Browning v. Walters,* 616 N.E.2d 1040, 1047 (Ind.Ct.App.1993). In the case at bar, Dreyer & Reinbold relied on Ellingwood's apparent and inherent authority to comply with his request to directly transfer the funds to AutoXchange's secured creditor. This resulted in a credit on AutoXchange's balance and diminishing of its debt to AFC. The circumstances of the present case satisfy none of the requirements for common law fraud. Therefore, we find Appellants' argument unavailing.

■ Secondly, arguing fraud by omission, Appellants contend that Dreyer & Reinbold had a duty to inform AutoXchange that it had issued a check directly to AFC. Again, we find this contention to be without merit. We have previously held that imputed knowledge is a tenet of agency law, and is based upon an underlying legal fiction of agency. *Southport Little League v. Vaughan,* 734 N.E.2d 261, 274 (Ind.Ct.App.2000), *trans. denied* (quoting *Stump v. Indiana Equip. Co.,* 601 N.E.2d 398, 403 (Ind.Ct.App.1992), *trans. denied*). Under this rule, the law imputes

to common law and statutory fraud claims. *Continental Basketball Ass'n, Inc. v. Ellenstein*

the agent's knowledge to the principal even if the principal does not actually know what the agent knows. *Id.* Furthermore, in the absence of a duty, mere silence is not actionable fraud. *Indiana Bank and Trust Co. v. Perry,* 467 N.E.2d 428, 431 (Ind.Ct.App.1984). Thus, based on the imputed knowledge doctrine, Dreyer & Reinbold were not under a duty to expressly notify AutoXchange, since Ellingwood's knowledge of the transfer of funds would be automatically imputed to AutoXchange.

Therefore, we find that the trial court did not err in its award of partial summary judgment in favor of Dreyer & Reinbold based on Appellants' failure to prove their claim of fraud. *See* T.R. 56(C). Consequently, we refuse to reverse the grant of partial summary judgment. *See Ayres,* 493 N.E.2d at 1234.

D. *Tortious Interference with a Business Relationship*

■ In their continuing effort to reverse the partial summary judgment in favor of Dreyer & Reinbold, Appellants subsequently claim that the trial court erred in finding no tortious interference with a business relationship. Specifically, Appellants assert that because Dreyer & Reinbold submitted payment directly to AFC without verifying Ellingwood's corporate authority, they acted illegally. The elements of this tort include: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *Levee v. Beeching,* 729 N.E.2d 215, 222 (Ind.Ct.App.2000).

*Enterprises, Inc.,* 669 N.E.2d 134, 137 (Ind. 1996).

The only interference by Dreyer & Reinbold in AutoXchange's business relationship with AFC that our review of the record discloses consists of Dreyer & Reinbold directly transferring the purchase price of the vehicles to AFC upon the request of Ellingwood, AutoXchange's authorized corporate agent. These funds were immediately credited towards AutoXchange's account. As we already determined, in complying with Ellingwood's request, Dreyer & Reinbold could reasonably and justifiably rely on his apparent and inherent agency authority. *See Menard*, 726 N.E.2d at 1212; *Scott*, 697 N.E.2d at 67. Although it is clear that, based on those circumstances, Appellants' allegation does not satisfy the elements of tortious interference with a business relationship, we are equally unconvinced that Dreyer & Reinbold's payment of AutoXchange's debt even amounts to the type of interference the tort is intended to protect against. Consequently, we agree with the trial court that Appellants cannot sustain a cause of action for tortious interference with a business relationship. Therefore, the trial court did not err in its award of partial summary judgment. *See* T.R. 56(C).

### E. *Intentional Infliction of Emotional Distress*

Lastly, Appellants assert that the trial court erred by rejecting their claim of intentional infliction of emotional distress when awarding its motion of partial summary judgment. In particular, Appellants insist that Dreyer & Reinbold's conduct was malicious and done with the intent to cause emotional distress. According to Appellants, under the circumstances, Dreyer & Reinbold's actions should be characterized as extreme and outrageous.

Contrary to Appellants' contention that a claim of intentional infliction of emotional distress can only be decided by a trier-of-fact, previous decisions of this court make it clear that the tort is amenable to be decided by the trial court on a motion for summary judgment. *See Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind.Ct.App. 1996). We have recognized this tort as "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Culison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (adopting the Restatement Second of Torts, § 46 (1965)). However, the burden of proof is high and liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Gable*, 673 N.E.2d at 810.

Here, the record simply does not support the atrocious conduct the tort calls for. Again, the evidence only establishes that Dreyer & Reinbold acted in accordance with a reasonable request made by Ellingwood, AutoXchange's corporate officer who possessed apparent and inherent authority. The record is completely devoid of any traces of malice, let alone atrocious conduct, on the part of Dreyer & Reinbold. Therefore, we conclude that Dreyer & Reinbold's actions did not inflict intentional emotional distress. Accordingly, we hold that the trial court did not err in its award of partial summary judgment in favor of Dreyer & Reinbold. *See* T.R. 56(C).

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted partial summary judgment as a matter of law in favor of Dreyer & Reinbold. We remand to the trial court for further judgment on all outstanding issues.

Affirmed and remanded.

CRONE, J., and VAIDIK, J., concur.

## ORDER TO PUBLISH MEMORANDUM DECISION

Comes now this court, having issued upon Appellee's motion an Order To Show Cause Why Memorandum Decision Should Not Be Published in the following words and figures, to wit:

(H.I.)

1. That this court's order allowed appellants twenty (20) days in which to show cause why the Memorandum Decision should not be published.

2.(a) That pursuant to this court's order appellants filed a response in which they stated that they had no objection to publication of the Memorandum Decision.

2.(b) That appellants failed to respond to this court's motion, and as a result failed to show cause within the required time period why the Memorandum Decision should not be published.

Having failed to receive any cause preventing publication, this court hereby GRANTS the Appellee's Motion for Publication of Unpublished Memorandum Decision.

It is therefore ORDERED, ADJUDGED and DECREED that the Memorandum Decision handed down by this court in the above-captioned matter on September 15, 2004 be published and it shall be so ordered.