ESTATE OF Diane Patrick TROXAL, et al., Appellant–Cross Claim Plaintiff,

v.

S.P.T., Appellee–Cross Claim Defendant.

No. 55A01–0602–CV–73.

Court of Appeals of Indiana.

July 25, 2006.

Richard A. Mann, Richard A. Mann, P.C., Indianapolis, IN, Attorney for Appellant.

Stephen A. Oliver, Boren, Oliver & Coffey, Martinsville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants and Cross Claim Plaintiffs, Estate of Diane Patrick Troxal, *et al.* (collectively, the Estate), appeal the trial court's grant of summary judgment in favor of Appellee and Cross Claim Defendant, S.P.T., and corresponding denial of its own Motion for Summary Judgment which sought to impose a constructive trust on the proceeds of Diane Troxal's (Diane) life insurance policy.

We affirm.

*ISSUE*

The Estate raises three issues on appeal, which we consolidate and restate as the following issue: Whether the trial court properly decided as a matter of law that the proceeds of Diane's life insurance policy inure to the benefit of the contingent beneficiary, Diane's minor child S.P.T., where the primary beneficiary has murdered the policy holder.

*FACTS AND PROCEDURAL HISTORY*

On January 12, 2004, Diane died as a result of multiple gunshot wounds to the head. During the same incident, her eighteen-year-old son William Patrick (William), also died due to multiple gunshot wounds. It was established that Diane died before William. On December 10, 2004, Diane's husband, Jeffrey A. Troxal (Troxal), was convicted of murdering Diane and William.

Diane had three children: an adult son, Sanford Patrick III, and William were the children from a previous marriage, while S.P.T., born on March 26, 1998, was born during Diane's marriage to Troxal. All three children resided with Diane at the time of her death.

Diane was the policy holder of a life insurance policy issued by her employer and held by Anthem Life Insurance Company (Anthem), under which she designated Troxal as the primary beneficiary, with S.P.T. as the contingent beneficiary. On January 14, 2005, Anthem filed its Complaint for Interpleader with regard to Diane's life insurance proceeds against several defendants including Diane's estate, William's estate, the estates' personal representatives, and S.P.T. On March 10, 2005, the Estate filed a cross claim against S.P.T., asserting that Diane's estate is entitled to receive the proceeds of the life insurance. On May 19, 2005, the Estate filed its Petition to Establish Constructive Trust and Appoint Trustee. On May 30, 2005, after a hearing, the trial court ordered the life insurance funds to be deposited with Edward Jones. Thereafter, on June 30, 2005, the trial court denied the Estate's petition to establish a constructive trust and ordered the insurance proceeds to be placed in an account agreed upon by the Estate and S.P.T. until the resolution of this case. On July 13, 2005, Anthem notified the trial court that the insurance proceeds for a total amount of $31,299.46 had been deposited in an Edward Jones' account.

On October 4, 2005, S.P.T. filed her Motion for Summary Judgment, to which the Estate filed a response and a cross claim for summary judgment on December 1, 2005. On January 27, 2006, the trial court conducted a hearing on the parties' cross claims for summary judgment. Thereafter, on January 30, 2006, the trial court issued its Order on Summary Judgment granting S.P.T.'s Motion for Summary

Judgment, and denying the Estate's Motion for Summary Judgment.

The Estate now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The Estate contends that the trial court incorrectly applied the law by awarding Diane's life insurance proceeds to her minor child, S.P.T., the contingent beneficiary under the policy. Specifically, the Estate maintains that interpretation of the constructive trust statute, enacted in Ind. Code § 29–1–2–12.1, as a whole mandates the depositing of the insurance funds in a constructive trust pending distribution by Diane's estate. Regardless of the existence of the contingent beneficiary, the Estate claims that because the primary beneficiary is still alive but has been found guilty of murdering the policy holder, the constructive trust statute must be applied. On the other hand, S.P.T. claims that neither the statute nor equity negate the contract provisions of Diane's life insurance policy; instead, S.P.T., focusing on the statutory language, urges us to adopt contract law principles and affirm the trial court's Order awarding the policy proceeds to the contingent beneficiary even though the primary beneficiary is still alive.

### I. *Standard of Review*

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. T.R. 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* However, here, both parties concede that no material question of fact exists; rather, they contest the trial court's application of the law to the undisputed facts. Accordingly, our review is *de novo* and we will reverse the grant of summary judgment if the record discloses an incorrect application of the law to the facts. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.*

■ We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### II. *Analysis*

In the instant case, we are requested to resolve the tension between contract law, equity, and the constructive trust statute, which codified the Slayer's Rule. In essence, the Estate contends that the statutory provisions of the Slayer's Rule take precedence over the language of the life insurance policy and equity because the conditions of the Rule have been met and therefore the life insurance proceeds should be placed in a constructive trust to be distributed by Diane's estate. On the other hand, S.P.T. urges this court to apply the policy's contingent beneficiary's provisions and equity which favor the distribution of the proceeds immediately into the hands of the contingent beneficiary.

Indiana Code section 29–1–2–12.1 codifying the constructive trust, or Slayer's Rule, provides in pertinent part as follows:

(a) A person is a constructive trustee of any property that is acquired by the person or that the person is otherwise entitled to receive as a result of an individual's death, including property from a trust, if that person has been found guilty, or guilty but mentally ill, of murder, causing suicide, or voluntary manslaughter, because of the individual's death. A judgment of conviction is conclusive in a subsequent civil action to have the person declared a constructive trustee.

. . .

(c) if a constructive trust is established under this section, the property that is subject to the trust may be used only to benefit those persons, other than the constructive trustee, legally entitled to the property, determined as if the constructive trustee had died immediately before the decedent. . . .

■ When interpreting a statute, the foremost objective is to determine and effectuate legislative intent. *In re K.B.*, 793 N.E.2d 1191, 1197 (Ind.Ct.App.2003). Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *Id.* A statute's meaning and interpretation are to be ascertained not only from the phraseology of the statute but also by considering its nature, design, and the consequences that flow from the reasonable alternative interpretations of the statute. *Id.*

The Slayer's Rule is of recent origin compared to other property rules whose roots are often embedded in feudalism.[1] *In re Estate of Foleno ex rel. Thomas v. Estate of Foleno*, 772 N.E.2d 490, 493 (Ind. Ct.App.2002), *trans. denied.* In England, the common law doctrines of attainder, forfeiture, corruption of blood[2], and escheat played a prominent part in the solution of the problem of the slayer and his bounty. *Id.* Application of these doctrines usually resulted in the Crown taking a murderer's property upon conviction, thus, destroying the line of descent. *Id.* Soon after the founding of this nation, these ancient doctrines were constitutionally and statutorily abolished. *Id.* at 494. Eventually, England followed suit and also shied away from their application. *See id.* Although the doctrines had the cruel effect of extinguishing the inheritance rights of a killer's innocent heirs, they provided one unintended benefit: separating a slayer from his victim's property. *Id.* The abolishment of attainder, forfeiture, corruption of blood, and escheat thus left an unanticipated void. *Id.*

In Indiana, this void was initially filled by the General Assembly and later by the judiciary. As early as 1907, our General Assembly enacted

That no person who unlawfully causes the death of another and shall have been convicted thereof, or aids or abets in such unlawful killing of another, shall take by devise or descent any part of the

---

1. We are indebted to Judge Baker's excellent historical analysis on the origins of the Slayer's Rule in *In re Estate of Foleno ex rel. Thomas v. Estate of Foleno*, 772 N.E.2d 490, 493–97 (Ind.Ct.App.2002), *trans. denied.*

2. Corruption of blood is, when any one is attained of felony or treason, then his blood is said to be corrupt; by means whereof neither his children, nor any of his blood, can be

heirs to him, or to any other ancestor, for that they ought to claim by him. And if he were a noble or a gentleman before, he and all his children are thereby ignoble and ungentle . . . *Diep v. Rivas*, 357 Md. 668, 745 A.2d 1098, 1103 n. 4 (2000) (citing *Termes de la Ley* 125 (1st Am.Ed.1812), as quoted in Black's Law Dictionary 348 (7th ed. 1999)).

property, real or personal, owned by the decedent at the time of his or her death. Act of Mar. 2, 1907, ch. 95, § 1, 1907 Ind. Acts 136 (codified at Burns Ind. Stat. Ann. § 2995 (Bobbs Merrill 1908)). A 1984 amendment further specified that a killer became a constructive trustee of any property he was entitled to receive as a result of the decedent's death. In the meanwhile, our courts recognized that a beneficiary forfeits insurance proceeds when he "intentionally and wrongfully" causes the death of the insured. *See Beene v. Gibraltar Indus. Life Ins. Co.*, 116 Ind.App. 290, 63 N.E.2d 299, 300 (1945) (concluding that there was no proof that the beneficiary intentionally and wrongfully killed the insured); *N.Y. Life Ins. Co. v. Henriksen*, 415 N.E.2d 146, 149 (Ind.Ct.App.1981), *reh'g denied* (relieving the insurance company of any liability on an insurance contract where the sole beneficiary of the policy was convicted of voluntary manslaughter in the death of the insured). Furthermore, in *National City Bank of Evansville v. Bledsoe*, 237 Ind. 130, 144 N.E.2d 710, 714 (1957), our supreme court stated that "equity will not permit a person to profit by his own wrong at the expense of another." Based on this premise, the *Bledsoe* court determined that equity principles and the constructive trust statute work in tandem. *Id.* at 715. In other words, the statute was intended "to supplement the prevailing equity rule," not "to supersede it." *Id.*

■ We have previously held that an insurance contract is personal property and thus can be transferred and delivered as any other personal property. *Elliott v. Metro. Life Ins. Co.*, 116 Ind.App. 404, 64 N.E.2d 911, 917 (1946). An insured is the rightful owner of the contractual rights and obligations contained in a life insurance policy up to the time of his death. *Estate of Foleno*, 772 N.E.2d at 497.

Here, Diane purchased the life insurance policy through her employer and paid the requisite premiums throughout the life of the policy. Thus, as the owner of the policy and the one whose life insured it, Diane paid for and enjoyed the exclusive right of choosing the beneficiaries.

In support of their respective arguments, both parties refer us to the same set of cases. Relying on *Estate of Chiesi v. First Citizens Bank, N.A.*, 613 N.E.2d 14 (Ind.1993), the Estate claims that the life insurance proceeds inure to Diane's estate via the legal fiction of the constructive trust. In *Estate of Chiesi*, the life insurance owner was murdered by his wife, the beneficiary under the policy. *Id.* No contingent beneficiary was listed. *Id.* Analyzing whether the life insurance proceeds should pass to the estate, thereby subjecting the proceeds to creditors' claims, or whether the funds should be paid immediately to the children of the marriage who were not mentioned as beneficiaries in the policy, our Supreme Court, affirmed and adopted the court of appeals' opinion. *Id.* at 15. After reviewing the competing statutory policies of the constructive trust versus the exemption of life insurance policies from creditors' claims when the policy names a spouse as a beneficiary, we determined that in the event the beneficiary of a policy murders the insured, the prevailing rule should be that an individual should not be allowed to profit from her wrongdoing. *Estate of Chiesi v. First Citizens Bank, N.A.*, 604 N.E.2d 3, 5 (Ind.Ct.App.1992). Accordingly, we held that the life insurance proceeds inured to the estate. *Id.* at 6.

Disputing the Estate's claim, S.P.T. relies on *In re Estate of Foleno*, 772 N.E.2d at 498. *In re Estate of Foleno*, the slayer, owning the life insurance policy, murdered the primary beneficiary, and then committed suicide. *Id.* at 492. Pursuant to the

policy's provisions, in the event that there was "no designated beneficiary living at the death of the insured," the insurance company would "pay the benefits to the persons surviving the insured who are listed in the order they appear." *Id.* Under the listed order, only the slayer's three brothers survived the policy holder and the primary beneficiary. *Id.* at 493. After analyzing the historical origins of the Slayer's Rule, we attempted to resolve the tension between the policy's provisions transferring the funds to the contingent beneficiaries, the brothers of the murderer, and the constructive trust statute directing the funds to the estate. *Id.* at 498. Reviewing out of state case law, we found persuasive that the contingent beneficiaries based their claim on the promise made by the insurance company to pay out the funds according to the policy's provisions. *Id.* Mindful of the Slayer's Rule preventing the killer and his heirs from enriching themselves through the victim's property, we determined that the contingent beneficiaries, brothers of the killer, were in no way responsible for the murder and, thus we held that they were entitled to the insurance proceeds based on their rights under the insurance contract. *Id.*

■ Persuasive authority developed in our sister states marks the evolution of a majority and minority rule in dealing with the issue before us. In cases involving life insurance proceeds where the policy provides both for a primary beneficiary and a contingent beneficiary and where the primary beneficiary is disqualified under the Slayer's Rule, the majority rule awards the policy proceeds to an innocent contingent beneficiary. In these cases where typically the contest is between the estate of the insured and the contingent beneficiary, the courts reason, expressly or impliedly, that looking to the terms of the contract best effectuates the intent of the insured. *See, e.g., Lamb v. Northwestern Nat'l Life Ins. Co.,* 56 Md.App. 125, 467 A.2d 182 (1983); *Lee v. Aylward,* 790 S.W.2d 462 (Mo.1990); *National Home Life Assurance Co. v. Patterson,* 746 P.2d 696 (Okla.Ct.App.1987). The minority position, also advanced by the Estate in the instant case, reflects that if the primary beneficiary survives the insured, but is disqualified under the Slayer's Rule, then the insured's estate recovers, rather than the contingent beneficiary, because the contingency that the primary beneficiary predecease the insured has not been satisfied. *See, e.g., Webb v. Voirol,* 773 F.2d 208, 212 (8th Cir.1985); *Bullock v. Expressmen's Mut. Life Ins. Co.,* 234 N.C. 254, 67 S.E.2d 71, 74–75 (1951)[3]; *Crawford v. Coleman,* 726 S.W.2d 9 (Tex. 1987).

Here, we find that the rules of equity, working in tandem with the constructive trust statute, favor the distribution of Diane's life insurance proceeds in accordance with the terms of the policy. In this regard, we build upon this court's precedent enunciated in *In re Foleno* and follow the majority position of our sister states. Thus, when basing a claim on a promise made by an insurance company, we hold that the life insurance proceeds should be transferred to the contingent beneficiary when the primary beneficiary is disqualified under the Slayer's Rule on the condition that the contingent beneficiary is innocent of the crimes committed by the slayer. Accepting the Estate's argument, and thus the minority position, would mean visiting the consequences of Troxal's crime on his minor daughter which conjures up the ghost of corruption of the

---

**3.** The rule in *Bullock* was changed by legislation to the majority position. *See Brooks v. Thompson,* 521 S.W.2d 563, 566 (Tenn.1975).

blood which was abolished in this country a century ago. As it is undisputed that S.P.T. is an innocent party to her parents' history, and is named as the contingent beneficiary in Diane's life insurance policy, we hold that, as a matter of law, S.P.T. is entitled to the funds under the life insurance policy.

Furthermore, the language of the constructive trust statute supports the decision reached today. Specifically, section c of the statute advises that the property subject to the trust, "may be used only to benefit those persons, other than the constructive trustee, *legally entitled to the property, determined as if the constructive trustee had died immediately before the decedent.*" I.C. § 29–1–2–12.1(c) (emphasis added). By treating Troxal, the primary beneficiary, legally dead and having predeceased the insured under the provisions of the statute, the right to the policy's proceeds transfers to the contingent beneficiary, S.P.T. Even though the legislature did not explicitly provide a stringent set of rules to cover all circumstances, it did provide us with guidance by including the phrase "legally entitled to the property." In this instance, the legal entitlement to the property is determined in accordance with contract rules. As the insured is the rightful owner of the contractual rights contained in a life insurance policy up to the time of his death, applying contract law to the provisions of the life insurance indisputably determines that S.P.T. is legally entitled to the proceeds as the contingent beneficiary since the primary beneficiary is presumed legally dead pursuant to the legal fiction of the constructive trust. *See In re Foleno*, 772 N.E.2d at 497.

## CONCLUSION

In light of the foregoing, we find that the trial court properly decided as a matter of law that the proceeds of Diane's life insurance policy inure to the benefit of the contingent beneficiary, Diane's minor child, S.P.T., where the primary beneficiary has murdered the policy holder.

Affirmed.

VAIDIK, J., and DARDEN, J., concur.