GIBSON–LEWIS, LLC, Appellant–
Plaintiff,

v.

TEACHERS CREDIT UNION
and, Prairie Group, Inc.,
Appellees–Defendants.

No. 71A03–0602–CV–65.

Court of Appeals of Indiana.

Sept. 26, 2006.

Scott M. Keller, Anderson, Agostino & Keller, P.C., South Bend, IN, Attorney for Appellant.

J. Michael Cavosie, Theresa L. Silver, Easter & Cavosie, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Appellant–Plaintiff, Gibson–Lewis, LLC (Gibson–Lewis), appeals the trial court's award of summary judgment in favor of Appellees–Defendants, Teachers Credit Union (TCU) and Prairie Group, Inc. (Prairie Group), which found that Prairie Group presented a valid claim pursuant to Indiana's personal liability statute.

Gibson–Lewis raises five issues on appeal, which we consolidate and restate as the following single issue: Whether the application of Indiana's personal liability statute, codified at Ind.Code § 32–28–3–9, is limited to a claimant who is employed as a subcontractor or supplier by the contractor who is owed money by the project owner, or whether the statute extends to a remote subcontractor who lacks a direct employment relationship with the contractor.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

Prior to July of 2002, TCU entered into a general construction contract with Gibson–Lewis under which the latter agreed to construct a new bank facility for TCU in Indianapolis, Indiana. As part of the project, Gibson–Lewis executed a subcontract with J.R. Design & Construction Group (J.R. Design) in which J.R. Design agreed to perform all concrete work on the TCU project. J.R. Design thereafter subcontracted all of the concrete work to Compass Contracting (Compass). Subsequently, Compass contracted part of the concrete work to Prairie Group. During the course of the TCU project, Gibson–Lewis learned that J.R. Design had either ceased doing business or was in the process of going out of business.

J.R. Design had no on-site involvement with the TCU project after it subcontracted all concrete work to Compass. Compass' job foreman was in charge of overseeing the concrete work on the project and notified Prairie Group when concrete was ready to be poured at various times during the project. The concrete work was paid by Gibson–Lewis via two-party

---

1. Oral arguments were held on August 21, 2006 in the Supreme Court Courtroom. We hereby congratulate and thank counsel for their excellent oral arguments.

checks made payable to J.R. Design and Compass. Neither J.R. Design nor Compass fully paid Prairie Group for its share of the concrete work. On March 18, 2003 and July 20, 2003, Prairie Group issued a written Notice of Personal Liability to TCU in an attempt to hold TCU personally liable for the payment of $16,944.91 pursuant to I.C. § 32–8–3–9.

Gibson–Lewis filed a Complaint for Declaratory Judgment against Prairie Group and TCU requesting the trial court to rule that I.C. § 32–28–3–9 does not permit Prairie Group to make a claim against funds owed by TCU to Gibson–Lewis. Prairie Group filed a Motion for Summary Judgment. Gibson–Lewis filed materials in opposition to Prairie Group's Motion for Summary Judgment and additionally filed its Cross–Motion for Summary Judgment. The trial court conducted a hearing on the cross-motions for summary judgment and thereafter entered an Order granting Prairie Group's Motion for Summary Judgment and denying Gibson–Lewis' Cross–Motion for Summary Judgment.

Gibson–Lewis now appeals. Additional facts will be provided as necessary.

## DISCUSSION

Gibson–Lewis contends that the trial court erred by granting Prairie Group's Motion for Summary Judgment. Specifically, they argue that the trial court's ruling erroneously extends application of the personal liability statute, codified in I.C. § 32–28–3–9, beyond the plain meaning of the words which limits the remedy to a claimant who is "employed" as a subcontractor or supplier by the contractor who is owed money by the project owner.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. T.R. 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 47 (Ind.Ct.App. 2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* However, here, both parties concede that no material question of fact exists; rather, they contest the trial court's application of the law to the undisputed facts. Accordingly, our review is *de novo,* and we will reverse the grant of summary judgment if the record discloses an incorrect application of the law to the facts. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.*

The trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

In interpreting the provisions of the personal liability statute, we are faced with a matter of law which we will determine *de novo. Pendleton v. Aguilar,* 827 N.E.2d 614, 619 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* We are not bound by the trial court's legal interpretation of a statute and need not give it deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us. During our review, the express language of the statute and rules of statutory

construction apply. *Id.* We will examine the statute as a whole and avoid excessive reliance on a strict literal meaning or the selective reading of words. *Id.* Where the language of the statute is clear and unambiguous, there is nothing to construe. *Id.* However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Further, we are compelled to ascertain and execute legislative intent in such a manner as to prevent absurdity and difficulty and to prefer public conscience. *Id.* In so doing, we are required to keep in mind the object and purpose of the law as well as the effect and repercussions of such a construction. *Id.* at 619–20.

## II. Analysis

▮ The personal liability statute provides a procedure for subcontractors, workers employed by others, and persons who lease materials or machinery for construction projects to establish liability on the part of the owner of the project for the amount owed to such subcontractors, workers, and persons by their respective contractors, employers, and lessees. *Mercantile Nat. Bank of Indiana v. First Builders of Indiana, Inc.*, 774 N.E.2d 488, 490 (Ind.2002), *reh'g denied.*

Here, Gibson–Lewis focuses its argument on the statutory language of the personal liability statute. Arguing that personal liability can only be vested in amounts that are due from the property owner to the employer, Gibson–Lewis maintains that, in this case, Prairie Group's employer was either J.R. Design or Compass. Consequently, they maintain that TCU can only be liable for payment to Prairie Group to the extent that TCU owes money to J.R. Design or Compass. In this regard, the designated evidence shows that during the course of the construction project TCU never owed any amounts to J.R. Design or Compass.

Specifically, Gibson–Lewis focuses on the following language of I.C. § 32–28–3–9 (emphasis added):

(a) This section applies to a:

(1) subcontractor;

(2) lessor leasing construction and other equipment and tools, regardless of whether an operator is also provided by the lessor;

(3) journeyman; or

(4) laborer;

employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing, or removing any house, mill, manufactory, or other building, or bridge, reservoir, system of waterworks, or other structure or earth moving, or in furnishing any material or machinery for these activities.

\* \* \*

(c) Subject to subsections (d) and (e), the property owner is liable for the person's claim.

(d) The property owner is liable to a person described in subsection (a) for not more than the amount that is due and may later become due *from the owner to the employer* or lessee.

(e) A person described in subsection (a) may recover the amount of the person's claim if, after the amounts of other claims that have priority are subtracted from the amount due *from the property owner to the employer* or lessee, the remainder of the amount due *from the property owner to the employer* or lessee is sufficient to pay the amount of the person's claim.

In its brief, Gibson–Lewis argues that because Prairie Group was not directly employed by Gibson–Lewis on the TCU project, and Gibson–Lewis did not owe anything to Prairie Group, Prairie Group's claim is not sustainable under plain meaning of the personal liability statute. Prairie Group responds that it is "well settled law that material suppliers need not have a direct contractual [or employment] relationship with the general contractor as a condition precedent to asserting a personal liability claim on funds held by a project owner." (Appellee's Br. pp. 3–4).

In support of their respective positions, both parties proffer the same set of three cases. First, in *Nash Engineering Co. v. Marcy Realty Corporation,* 222 Ind. 396, 54 N.E.2d 263 (1944), our Supreme Court, while noting that one who contracts with a subcontractor is also a subcontractor, stated that courts will, so far as is consistent with the language of the act, avoid any construction that results in an arbitrary or capricious classification denying to one group of citizens and granting to another the benefits of a remedial act. *Id.* at 266. The *Nash* court, quoting from *Colter v. Frese,* 45 Ind. 96 (1873), stated that:

> The contractor has the right to a lien and also his personal liability action against the owner. The object of the law was to place the subcontractor, journeyman, laborer and materialman upon the same footing with the contractor, except that the personal action against the owner in favor of the sub-contractor is limited by the amount that may be due or may become due from the owner to the employer. The lien might be an inadequate remedy, as the property might be previously encumbered to the extent that would render the lien unavailable; hence the right of a personal action against the owner is conferred to the extent indicated.

*Id.* at 267. While Prairie Group cites the *Nash* decision as evidence that a fourth tier materialman could avail himself of the provisions of the personal liability statute, Gibson–Lewis distinguishes on the very narrow issue that *Nash's* analysis focuses on the ability of suppliers *in general* to assert claims under the statute without considering how claims are restricted to amounts the owner owes to the *employer of the fourth tier materialman.*

Next, in *Indianapolis Power & Light Co. v. Southeastern Supply Co., Inc.,* 146 Ind.App. 554, 257 N.E.2d 722, 723 (1970), the project owner hired a general contractor to perform construction work. In turn, the general contractor hired a subcontractor to perform plastering work, and the plaster subcontractor then purchased plaster materials from a supplier. *Id.* The plaster subcontractor failed to pay the supplier for the plaster materials. *Id.* The majority held that it was immaterial whether or not the contractor was indebted to the subcontractor so long as the owner still owned money on the project. *Id.* at 731.

Finally, in *Indianapolis Power & Light Co. v. Todd,* 485 N.E.2d 632, 633 (Ind.Ct. App.1985), employees of the subcontractor of a construction project sought to hold the owner of the project personally liable for the amount of labor the employees had performed and for which they had not been paid by their employer, the subcontractor. IPALCO, the project owner, claimed that because no contractual relationship existed between IPALCO and the subcontractor, only the general contractor was bound to pay the subcontractor. *Id.* at 635. Alternatively, IPALCO asserted, as Gibson–Lewis does here, that even if a contractual relationship did exist, the subcontractor, as "employer" under the statute, was not due anything under the contract having already been paid in full by

the general contractor. *Id.* Accordingly, IPALCO argued that the claimants, as laborers of the subcontractor, were not members of the statute's protected class. *Id.*

In *Todd,* we noted that the statute defines the class of claimants as *any* subcontractor, journeyman, laborer or materialmen in erecting a structure. *Id.* As such, the qualification for inclusion in the class is that one be employed in erecting a structure or in furnishing material therefore. *Id.* Relying on *Nash* and *Southeastern,* the *Todd* court compared the protected class of claimants under the personal liability statute with the one under the mechanic's lien statute and stated that "we have difficulty believing that the legislature deliberately created a class of artisans and suppliers not dissimilar to the class benefited by the mechanic's lien section and then chose to arbitrarily limit or exclude a portion thereof from membership." *Id.* at 636. Because we found the purpose of the personal liability section to be the same as the mechanic's lien section, and the *Todd* claimants would also have qualified for a mechanic's lien, we held that the personal liability statute must be construed to permit claimants employed by the subcontractor to participate on an equal basis with laborers employed by the contractor. *Id.*

Gibson–Lewis focuses its attention on Judge Sullivan's dissent in *Southeastern,* and urges us to adopt the dissent as our majority opinion. In his dissent, Judge Sullivan criticizes the *Nash* decision for improperly failing to consider the further requirements under the personal liability statute insofar as liability of an owner is limited to "the amount which may be *due from him (the owner) to the employer.*" *Southeastern,* 257 N.E.2d at 738 (emphasis added). In his analysis, Judge Sullivan starts from the viewpoint that the personal liability statute itself is not complicated. *Id.* "[T]he word 'employer' as used in the statutory phrase 'for which the employer is indebted to him' means [in *Nash's* factual situation] the employer of the supplier of the material for which a claim is made in this case." *Id.* Clarifying the relationship of the parties in *Nash,* Judge Sullivan provided the following diagram:

Owner—Defendant

↓

Contractor

↓

Subcontractor—Employer

↓

Materialman—Plaintiff

Judge Sullivan continued that as we are not empowered to redefine the word 'employer' as we deem fit, we necessarily have to use the same definition throughout the statute. *Id.* at 738. Accordingly, if the subcontractor is considered the employer within the meaning of that word first used in the statute, the subcontractor must necessarily be considered to be the 'employer' within the meaning of the word as later used in the same statutory section. *Id.* Therefore, Judge Sullivan concluded because IPALCO, the owner, owed nothing to the 'employer,' the subcontractor, no recovery can be made on the basis of the personal liability statute. *Id.*

Utilizing Judge Sullivan's reasoning, Gibson–Lewis now claims that because TCU, as owner, owed nothing to J.R. Design or Compass, as the employers, Prairie Group cannot avail itself of the provisions of the personal liability statute. We are not persuaded.

 The personal liability statute has been uniformly interpreted since the institution of the Lien Act of 1867 through established precedent dating back to our

Supreme Court's decision in *Colter v. Frese*, 45 Ind. 96 (Ind.1873). While acknowledging a lack of precision in the language, we reject Gibson–Lewis' argument because of the long period of legislative acquiescence to this line of decisions. "The failure of the legislature to change a statute after a line of decisions of a court of last resort giving the statute a certain construction amounts to an acquiescence by the legislature in the construction of the court and that such construction should not then be disregarded or lightly treated." *Durham ex. Rel. Estate of Wade v. U–Haul Intern.*, 745 N.E.2d 755, 768 (Ind.2001), *reh'g denied* (citing *Heffner v. White*, 221 Ind. 315, 47 N.E.2d 964, 965 (1943)). The legislature has the power to change the rule if it disagrees with the court's constructions of its legislative enactments or feels that there is a need to change that rule based on the needs or requirements of society. *See Miller v. Mayberry*, 506 N.E.2d 7, 11 (Ind.1987). Here, it has not. Accordingly, even though we acknowledge the reasoning of Judge Sullivan's well-argued dissent, we expressly decline to follow it today. Thus, we will not disturb the settled precedents of this court as stated in *Colter, Nash, Southeastern,* and *Todd.*

The purpose of the personal liability statute is to promote justice and honesty, and to prevent the inequity of an owner or general contractor from enjoying the fruits of the labor and material furnished by others, without recompense. *See Todd*, 485 N.E.2d at 636 (applying the underlying purpose of the mechanics' lien to the personal liability statute). We believe that the general contractor is in a better position to prevent losses than the employee of a subcontractor or the material suppliers of subcontractors through oversight of the worksite and instituting disclosure procedures for all subcontractors.

Mindful of the established case law interpreting the personal liability statute and the statute's purpose, we conclude that Prairie Group is entitled to assert a claim on funds owed by TCU to Gibson–Lewis pursuant to I.C. § 32–28–3–9. Thus, we affirm the trial court's grant of summary judgment.

Based on the foregoing, we find that the trial court properly granted summary judgment in favor of Prairie Group.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.